[No. B207453. Second Dist., Div. One. Apr. 8, 2009.]

RENE FLORES et al., Plaintiffs and Respondents, v.
AXXIS NETWORK & TELECOMMUNICATIONS, INC., et al.,
Defendants and Appellants.

**COUNSEL**

Atkinson, Andelson, Loya, Ruud & Romo, Thomas W. Kovacich, Christopher S. Milligan and Jennifer D. Cantrell for Defendants and Appellants.

Donahoo & Associates, Richard E. Donahoo and Thomas J. Welch for Plaintiffs and Respondents.

## OPINION

**ROTHSCHILD, J.**—Axxis Network & Telecommunications, Inc. (Axxis), appeals from the court's order denying its petition to compel arbitration of former employees' claims that they had not been paid the prevailing wage for work performed on projects for the Los Angeles Unified School District (LAUSD) as required by Labor Code section 1770 et seq. governing public works projects. We agree with the trial court that the arbitration provision of the agreement between the LAUSD and trade unions involved in the projects did not mandate arbitration of these statutory prevailing wage claims. Accordingly, we affirm the court's order denying the petition to compel arbitration.

## BACKGROUND

The LAUSD launched a major program of new school construction and major rehabilitation of existing school facilities involving over 1,000 buildings with funds provided by Proposition BB and Measure K. To help ensure construction projects would be completed on time and within budget the LAUSD entered into a "project stabilization agreement" (agreement) in May 2003 with the Los Angeles/Orange Counties Building and Construction Trades Council and various craft unions. The purpose of the agreement was to "establish[] the labor relations Policies and Procedures for the District and for the craft employees represented by the Unions engaged in the District's new school and building construction and substantial rehabilitation and capital improvement program."

Axxis is a licensed contractor that performed electrical, networking, and telecommunication services under various contracts with the LAUSD. As a condition of performing work for the LAUSD projects Axxis agreed to be bound by the terms of LAUSD's agreement.

Rene Flores, Jorge Roa, and Miguel Arteaga (employees) were employed by Axxis to perform work implementing, installing, and constructing networking and electrical services on public works projects for the LAUSD. In February 2007 they filed suit against Axxis, and its payment bond surety, Merchants Bonding Company, alleging that they had not been paid statutory prevailing wages and other benefits for work performed on various LAUSD construction projects. In January 2008 the employees filed a second amended complaint in this case asserting three causes of action for (1) failing to pay prevailing wages under Labor Code sections 1771, 1774 and 1194, (2) failing to pay waiting time penalties under Labor Code sections 203 and 203.5, and (3) recovery on the payment bonds under Civil Code section 3250 as against Merchants Bonding Company.

Axxis petitioned to compel arbitration of the employees' claims under the grievance and arbitration provision of the agreement. The trial court denied Axxis's petition finding that under the authority of *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430 [95 Cal.Rptr.2d 294] the agreement did not contain the "clear and unmistakable waiver of [employees'] right[s] to a judicial forum necessary to compel arbitration of [their] statutory claims." This appeal followed.[1]

## DISCUSSION

## STANDARD OF REVIEW

We review the trial court's order denying Axxis's petition to compel arbitration independently. " 'We have no need to defer, because we can ourselves conduct the same analysis,' which 'involves a purely legal question or a predominantly legal mixed question.' (*Smiley* v. *Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].)" (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348–349 [79 Cal.Rptr.2d 308, 965 P.2d 1178]; see also *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71 [100 Cal.Rptr.2d 683] [appellate courts review the denial of a petition to compel arbitration de novo].)

### AGREEMENT'S WAIVER OF A JUDICIAL FORUM FOR STATUTORY CLAIMS

*General Principles*

In *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 [142 L.Ed.2d 361, 119 S.Ct. 391], the United States Supreme Court addressed the question whether a general arbitration clause in a collective bargaining agreement required an employee to use the arbitration procedures for an alleged violation of the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.). (525 U.S. at p. 72.) The collective bargaining agreement governing the employee's employment provided that it was intended to cover all matters " 'affecting wages, hours, and other terms and

---

[1] Merchants Bonding Company had sought a stay of the action pending arbitration. (Code Civ. Proc., § 1281.4.) After the trial court's ruling Axxis filed a notice of appeal from the court's denial of its petition to compel arbitration which Merchants Bonding Company joined. We will liberally construe the notice of appeal as regards Merchants Bonding Company as instead an appeal from the court's implied denial of its request for a stay pending arbitration. (See Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed."]; *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385, 388 [35 Cal.Rptr. 218] [denial of an order for a stay of proceedings pending arbitration is not expressly made appealable but it affects the order appealed from, substantially affects the rights of the parties, and is thus reviewable on appeal].)

conditions of employment' " and stated that all unresolved disputes were subject to arbitration. (*Id.* at pp. 72–73.) The employee was also subject to a seniority plan, which contained its own grievance procedures and specified that any dispute " 'arising out of the terms and/or conditions' " of the agreement, including the " 'interpretation or application' " of the agreement, was subject to the grievance procedures. (*Id.* at p. 73.) The employee filed suit under the ADA when he learned that stevedoring companies would not hire him because he had previously settled a claim for permanent disability. (525 U.S. at pp. 74–75.) The district court dismissed the case because the employee had failed to pursue the grievance procedures of the collective bargaining agreement and the seniority plan. The Fourth Circuit affirmed and the United States Supreme Court reversed.

 The *Wright* court noted that in the context of collective bargaining agreements there is generally a presumption of arbitrability of issues that are arguably within the scope of the agreement. The presumption, the court explained, "does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts to interpret the terms of a CBA [collective bargaining agreement]." (*Wright v. Universal Maritime Service Corp., supra*, 525 U.S. at p. 78, italics omitted.) The court stated that the discrimination claim under the ADA concerned neither the application nor interpretation of the agreement, but the meaning of a federal statute, and was thus "distinct from any right conferred by the . . . agreement." (525 U.S. at p. 79.) Because the case involved the interpretation and application of a statute, "the ultimate question for the arbitrator would be not what the parties have agreed to, but what federal law requires . . . ." (*Ibid.*) Accordingly, for an agreement to require arbitration of a statutory claim the court held it must be "clear and unmistakable" that the parties intended to waive a judicial forum for statutory claims. (*Id.* at p. 80.) The waiver must be " ' "explicitly stated" ' " because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA [collective bargaining agreement]." (*Ibid.*)

The arbitration provision under review did not meet this "clear and unmistakable" standard. The arbitration clause was very general and failed to include an "explicit incorporation of statutory antidiscrimination require-ments." (*Wright v. Universal Maritime Service Corp., supra*, 525 U.S. at p. 80.) Accordingly, the court held that the agreement had not waived the covered employee's right to a judicial forum for his federal statutory claims of discrimination. (*Id.* at p. 82.)

In *Vasquez v. Superior Court, supra*, 80 Cal.App.4th 430, the trial court granted the employer's petition to compel arbitration of a covered employee's claims for discrimination and retaliation and the employee filed a petition for

a writ of mandate to overturn the order compelling arbitration. The arbitration clause at issue in *Vasquez* stated that it applied to all grievances and disputes between the union and employer regarding the interpretation or application of any term of the agreement. The agreement also contained a provision prohibiting discrimination against any applicant or employee " 'on account of race, color, religion, sex, age or national origin under applicable federal and state law.' " (*Id.* at p. 433.)

Applying the analysis of *Wright*, the *Vasquez* court concluded that in "determining whether there has been a sufficiently explicit waiver, the courts look to the generality of the arbitration clause, explicit incorporation of statutory antidiscrimination requirements, and the inclusion of specific anti-discrimination provisions. The test is whether a collective bargaining agreement makes compliance with the statute a contractual commitment subject to the arbitration clause. [Citations.]" (*Vasquez v. Superior Court, supra,* 80 Cal.App.4th at pp. 434–435.) If an agreement does not clearly, explicitly, and unmistakably show that the parties intended to make statutory claims subject to arbitration, the *Vasquez* court stated that an alternative test for determining whether a dispute was subject to arbitration was the coupling of a general arbitration clause with an explicit incorporation of statutory antidiscrimination requirements elsewhere in the agreement. This combination had been upheld by courts as sufficient, provided another part of the agreement " 'makes it unmistakably clear that the discrimination statutes at issue are part of the agreement, [then] employees will be bound to arbitrate their [state and federal statutory] claims.' " (*Id.* at p. 435, quoting *Carson v. Giant Food, Inc.* (4th Cir. 1999) 175 F.3d 325, 331.)

The agreement at issue in *Vasquez* met none of these requirements. The arbitration clause contained very broad, general language, and did not specifically incorporate by reference, nor even mention the FEHA (Cal. Fair Employment and Housing Act; Gov. Code, § 12900 et seq.) or ADA, the statutes at issue in the *Vasquez* case. The court thus found the general language in the agreement's arbitration provision insufficient to constitute a waiver of a judicial forum for Vasquez's statutory disability discrimination and retaliation claims. (*Vasquez v. Superior Court, supra,* 80 Cal.App.4th at p. 436.) Further, and although the agreement specifically mentioned national origin discrimination, this too was insufficient to make Vasquez's national origin discrimination claim arbitrable because the agreement contained "no express provision that the antidiscrimination commitment [was] subject to the grievance and arbitration provisions." (*Ibid.*)

*Application to the Present Case*[2]

The agreement provided a broad, nonspecific, grievance and arbitration procedure for resolving disputes involving the interpretation or application of the agreement, as well as disputes concerning employee wages, working hours, and conditions (Schedule A's). Section 10.2 was entitled "Processing Grievances," and stated that "[a]ny questions arising out of and during the term of this Agreement involving its interpretation and application, . . . shall be considered a grievance and subject to resolution under the [arbitration] procedures." In the event an employee felt aggrieved by an alleged violation of the agreement, a union representative, acting on the employee's behalf, was to contact the involved contractor to resolve the matter. If the union representative and contractor failed to resolve the issue within 10 days, then the dispute was to be reduced to writing and presented ·to the LAUSD's representative (Project Labor Coordinator) who then was to meet with the union representative and involved contractor. In the event these parties failed to resolve the dispute within seven days, then the matter was to be referred to a preselected group of arbitrators, whose decision would be final and binding.

The agreement also specifically referenced the prevailing wage statutes (§§ 5.1–5.4 [payment of prevailing wage and compliance with prevailing wage laws]; § 6.3 [overtime pay under the applicable prevailing wage determination]; § 6.5 [recognized holidays under the prevailing wage determinations]; § 6.9 [straight or premium pay under the prevailing wage law for makeup days]). Section 5.1, for example, governed wages and provided that "All employees covered by this Agreement shall be classified in accordance with work performed and paid the hourly wage rates for those classifications in compliance with the applicable prevailing wage rate determination established pursuant to the California Labor Code by the Department of Industrial Relations. If a prevailing rate increases under state law, the contractor shall pay that rate as of its effective date under the law. If the prevailing wage laws are repealed during the term of this Agreement, the contractor shall pay the wage rates established under the Schedule A's, except as otherwise provided in this Agreement."

Axxis concedes that there is no express provision in the agreement "mak[ing] compliance with the statute a contractual commitment subject to the arbitration clause," the inclusion of which would have made the statutory claims arbitrable. (*Vasquez v. Superior Court, supra,* 80 Cal.App.4th at p. 434; see *Wright v. Universal Maritime Service Corp., supra,* 525 U.S. at p. 81; *Rogers v. New York University* (2d Cir. 2000) 220 F.3d 73, 76 [the arbitration clause of the agreement should have "ma[d]e compliance with the

---

[2] Although the issue is disputed, we will assume for purposes of analysis that the employees were covered by the agreement's provisions.

named or cited statute a contractual commitment that is subject to the arbitration clause"]; cf. *Safrit v. Cone Mills Corp.* (4th Cir. 2001) 248 F.3d 306, 308 [title VII claims were arbitrable where self-contained arbitration clause specifically mentioned title VII claims and stated unresolved " 'grievances arising under this Section are the proper subjects for arbitration' "].)

Nevertheless, relying on *Vasquez* Axxis argues that the factors of a broad, nonspecific arbitration clause, coupled with express mentions of the prevailing wage laws, incorporation of the Labor Code wage rate determinations by the Department of Industrial Relations, and making compliance with prevailing wage laws a contractual commitment, in combination, constituted an implied agreement to make these statutory claims arbitrable.

The *Vasquez* court did not purport to state exclusive considerations for deciding whether a claim was arbitrable under a particular agreement. Nor did the *Vasquez* court purport to address the question of which factors, if any, would clearly demonstrate the opposite—that a particular issue was not arbitrable. A review of the agreement in this case, despite the existence of certain of the *Vasquez* factors, shows it contained certain provisions demonstrating that claims for prevailing wage law violations were specifically not subject to arbitration. Accordingly, Axxis's reliance on *Vasquez* is unavailing.

The agreement in this case carved out an exception for complaints of statutory and regulatory violations from the arbitration procedure. It distinguished between complaints of violations of law on the one hand, and disputes or grievances arising from the interpretation or application of the agreement on the other, and provided different procedural mechanisms for resolving each. The arbitration provision applied to resolve generic, nonspecific "disputes" or "grievances" concerning the application or interpretation of contractual terms of the agreement and general disputes arising from that agreement. In contrast, the agreement specified distinctly different procedures and remedies for resolving what it termed "complaints" concerning alleged violations of law, as distinguished from alleged violations of rights solely arising from the agreement. Notably, the agreement specifically evidenced an intent to carve out from the arbitration requirement "complaints" involving alleged violations of the prevailing wage laws.

The agreement's intent to treat prevailing wage law violations differently is evidenced by its distinct procedures for resolving such claims. Article V of the agreement concerned "Wages and Benefits" and section 5.4 of this article prescribed a procedure for resolving claims of prevailing wage law violations which, by its terms, expressly bypassed the arbitration provision. Section 5.4 was entitled "Compliance with Prevailing Wage Laws" and specified: "The parties agree that the Project Labor Coordinator [person or entity designated by the LAUSD] shall monitor the compliance by all contractors and subcontractors with all applicable federal and state prevailing wage laws and

regulations, and that such monitoring shall include contractors engaged in what would otherwise be Project Work . . . . All complaints regarding possible prevailing wage violations shall be referred to the Project Labor Coordinator for processing, investigation and resolution, and if not resolved within thirty calendar days, may be referred by any party to the state labor commissioner."

This section described "complaints" of prevailing wage law violations, as distinguished from "disputes" or "grievances" as used in the arbitration provision, and said nothing about resolving such "complaints" through the arbitration procedures of section 10.2. Instead, it specified that "complaints" of prevailing wage law violations were to be resolved entirely outside the arbitration procedure by first referring the matter directly to LAUSD's representative in charge of the project, and then if not timely resolved, to the state Labor Commissioner—both steps outside the arbitration procedure. The arbitration provision, in contrast, specified that a "dispute" or "grievance" was to be referred to the union representative (as distinguished from LAUSD's Project Labor Coordinator) for resolution with the contractor, and if unresolved, ultimately to arbitration (and not to the state Labor Commissioner).

The agreement's article XI concerning "Regulatory Compliance" reinforces the view that the agreement provided for an entirely separate scheme outside the arbitration procedures to address and resolve claims of prevailing wage law violations. Section 11.3 was entitled "Prevailing Wage Compliance" and stated: "The [crafts] Council or Union shall refer all complaints regarding any potential prevailing wage violation to the Project Labor Coordinator, who on its own, or with the assistance of the District's labor compliance program, shall process, investigate and resolve such complaints, consistent with Article V, Section 5.4 [for investigation and resolution and, if not resolved within 30 days, referral to the State Labor Commissioner]. The Council or Union, as appropriate, shall be advised in a timely manner with regard to the facts and resolution, if any, of any complaint. It is understood that this Section does not restrict any individual rights as established under the State Labor Code, including the rights of an individual to file a complaint with the State Labor Commissioner."[3]

---

[3] In the event a contractor or subcontractor violated any state or federal law or regulation, the agreement specified that the LAUSD "shall take such action as it is permitted by law or contract" to enforce compliance, and absent compliance, the agreement authorized the LAUSD to assess fines and penalties and to remove the offending contractor from the project. (Art. XI, § 11.4, "Violations of Law.") The agreement did not state that alleged violations of law were subject to resolution under the arbitration agreement.

This section complements section 5.4 regarding the agreement's separate procedure for resolving prevailing wage law "complaints" by cross-referencing its procedure for reporting and resolving such violations outside the arbitration procedure. Section 11.3 reiterated that such claims were to be referred directly to the LAUSD's representative initially for resolution and, failing that, to the state Labor Commissioner, among other potential individual remedies. Neither of these provisions (§§ 5.4 & 11.3) referred to the arbitration provision of section 10.2, and both sections described procedures and remedies for resolving prevailing wage law complaints which bypassed the arbitration procedure entirely.

■ Because the agreement itself carved out an exception from arbitration for alleged violations of prevailing wage laws the trial court correctly denied Axxis's petition to compel arbitration of the employees' prevailing wage law claims.

## ARBITRATION UNDER LABOR CODE SECTION 229

Alternatively, Axxis argues that Labor Code section 229 requires that the employees' claims be arbitrated because they concern the interpretation and application of the agreement. We disagree.

Labor Code section 229 provides: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement."

■ The meaning of the first sentence of Labor Code section 229 was addressed in *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35 [100 Cal.Rptr. 791]. In *Ware* the trial court had denied the employer's petition to compel arbitration because the written arbitration agreement between the parties was not the product of a collective bargaining agreement. The appellate court affirmed noting that "[n]o cases have construed section 229 of the Labor Code, but the intent appears quite clear. While the strong public policy of the state favors arbitration [citation], the intent of the statute is to provide in the first instance a judicial forum where there exists a dispute as to wages." (*Id.* at p. 43.)

The second sentence of Labor Code section 229—the clause at issue in this case—was interpreted by the Court of Appeal in *Plumbing, Heating etc. Council v. Howard* (1975) 53 Cal.App.3d 828 [126 Cal.Rptr. 406] (*Howard*).

In *Howard* an employee claimed that he was entitled to a foreman's rate of pay for a particular job based on schedules in a union agreement. The employers disagreed, arguing that the agreement's language was ambiguous on the point and that an entirely different union agreement governed the employee's work status for the job in any event. (*Id.* at pp. 831–832.) Both agreements contained grievance and arbitration procedures but the employee filed a claim with the Labor Commissioner instead. The Labor Commissioner determined which agreement applied and concluded that under that agreement the employee was entitled to a foreman's rate of pay. The employers filed suit to enjoin the Labor Commissioner and the employee from enforcing or from attempting to enforce the employee's wage claim outside the unions' collective bargaining procedures for addressing such claims. (*Id.* at p. 832.)

In interpreting the second sentence of Labor Code section 229 the *Howard* court concluded that the "policy favoring collective bargaining appears to be embodied in the second sentence of Labor Code section 229. To allow the Labor Commissioner to pursue enforcement of a wage claim in the employee's stead, despite the existence of a collective bargaining agreement with an arbitration clause, would clearly thwart this policy. For these reasons, it is concluded that the Legislature in enacting section 229 sought to encourage the resolution of labor disputes covered by collective bargaining agreements via arbitration-grievance procedures contained therein, and therefore intended to prohibit the Labor Commissioner from assuming jurisdiction to enforce claims for wages arising under collective bargaining agreements." (*Howard, supra*, 53 Cal.App.3d at pp. 834–835.) Because the circumstances in *Howard* involved disputes about which collective bargaining agreement applied to the employee's claim, as well as the proper interpretation of admittedly ambiguous provisions in the agreements, the court held that the second sentence of Labor Code section 229 required resolution of the employee's claims through the agreements' grievance and arbitration procedures. Accordingly, the court found the Labor Commissioner's orders invalid and enjoined their enforcement. (53 Cal.App.3d at p. 835.)

In the present case the parties dispute whether resolution of the prevailing wage law claims will involve the proper interpretation or application of the agreement such that Labor Code section 229 compelled the employees to arbitrate their claims under the procedures outlined in the agreement. It is immaterial whether the agreement may require interpretation because, as noted in the previous part, the agreement itself carved out an exception from arbitration for alleged violations of prevailing wage laws. This being the case,

Labor Code section 229 is inapplicable to the present dispute and does not provide support for compelling arbitration of the prevailing wage claims in this case.[4]

## DISPOSITION

The order is affirmed. Respondents are awarded their costs on appeal.

Mallano, P. J., and Tucker, J.,[*] concurred.

---

[4] Because we affirm the trial court's order denying Axxis's motion to compel arbitration, Merchants Bonding Company's appeal from the court's denial of its request for a stay pending the arbitration is moot.

[*] Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.