**Kimo MEYER, et al., Plaintiffs,**

**v.**

**IRWIN INDUSTRIES, INC., Defendant.**

**No. CV 10–03489 SJO (PJWx).**

United States District Court, C.D. California.

July 16, 2010.

---

Ellyn Moscowitz, Ellyn Moscowitz Law Offices, Oakland, CA, Eric A. Grover, Keller Grover LLP, San Francisco, CA, Scot Bernstein, Scot David Bernstein Law Offices, Folsom, CA, for Plaintiffs.

Andres C. Hurwitz, Robert R. Roginson, III, Steven D. Atkinson, Atkinson Andelson Loya Rund & Romo, Cerritos, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION [Docket No. 11]

S. JAMES OTERO, District Judge.

This matter is before the Court on Plaintiff Kimo Meyer's ("Plaintiff") Motion to Remand for Lack of Subject Matter Jurisdiction, filed on June 14, 2010. Defendant Irwin Industries, Inc. ("Defendant") filed an Opposition, to which Plaintiff replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for July 12, 2010. *See* Fed.R.Civ.P. 78(b). For the following reasons, Plaintiff's Motion to Remand is **GRANTED**.

## I. *BACKGROUND*

On April 2, 2010, Plaintiff, who was previously employed by Defendant, filed suit in state court, on behalf of himself and others similarly situated, alleging the following causes of action: (1) unfair business practices in violation of California Business and Professions Code § 17200 *et seq.* ("§ 17200"); (2) violations of the Labor Code; (3) declaratory relief; (4) injunctive relief; and (5) attorneys' fees.[1] (*See generally* Compl.) Plaintiff alleges that Defendant did not pay for "all hours worked," did not provide a second meal period when he worked more than ten hours in a day, and did not provide a third rest period when he worked more than ten hours in a day. (Compl. ¶¶ 9, 12, 13, 14.) Plaintiff's other claims are derivative of these claims. (Mem. of P. & A. in Supp. of Mot. to Remand ("Pl.'s Mot.") 3; Def.'s Opp'n 8.)

On May 10, 2010, Defendant removed this action to federal court, asserting that federal question jurisdiction arises because Plaintiff's claims "are preempted by Section 301 of the Labor Management Relations Act (the "LMRA") ["§ 301"], 29 U.S.C. § 185(a)." (Notice of Removal ¶ 8.) Plaintiff now moves to remand this action to state court. (*See generally* Pl.'s Mot.)

## II. *DISCUSSION*

### A. *Removal Jurisdiction*

■■■ "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."[2] 28 U.S.C. § 1441(b). Whether a claim arises under federal law for removal purposes is determined by the same "well-pleaded complaint rule," which provides

---

1. Defendant "provides safety support and maintenance, turnaround and construction services for the oil, natural gas and petrochemical industries throughout California." (Def.'s Opp'n to Pl.'s Mot. to Remand ("Def.'s Opp'n") 2.)

2. Defendant incorrectly argues that because Plaintiff's Motion was filed more than thirty days after Defendant's Notice of Removal was filed, it is untimely, pursuant to 28 U.S.C. § 1447(c) ("§ 1447(c)"). (Def.'s Opp'n 12.) Section 1447(c) provides in pertinent part: "A motion to remand the case on the basis of any defect other than subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded...." 28 U.S.C. § 1447(c). As Plaintiff's Motion is based on whether this Court has subject matter jurisdiction, Plaintiff's Motion is not untimely.

that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *see Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). "This rule makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law." *Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1107 (9th Cir.2000). Thus, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ "There does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." *Balcorta,* 208 F.3d at 1107 (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta,* 208 F.3d at 1107 (citing *Franchise Tax Bd.,* 463 U.S. at 24, 103 S.Ct. 2841).

### B. *Section 301 of the LMRA*

■ The "complete preemption" exception to the well-pleaded complaint rule applies primarily under § 301 of the LMRA. In pertinent part, § 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district of the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In *Textile Workers v. Lincoln Mills,* the Supreme Court held that "§ 301 not only provides federal court jurisdiction over controversies involving [a] collective-bargaining agreement ["CBA"], but also authorizes federal courts to fashion a body of federal law for enforcement of these [CBAs]." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *see Burnside v. Kiewit Pac. Corp.,* 491 F.3d 1053, 1058–60 (9th Cir.2007); *see Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

"Despite the breadth of § 301 complete preemption, [however,] not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted." *Associated Builders & Contractors, Inc. v. Local 302 Intern. Bhd. of Electrical Workers,* 109 F.3d 1353, 1357 (9th Cir.1997). In *Livadas v. Bradshaw,* the Supreme Court expressed that § 301 "has not yet become, nor may it [become] a sufficiently 'mighty oak.'" *Livadas v. Bradshaw,* 512 U.S. 107, 122, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Livadas explained:

> [T]he pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbi-

tration promises by "relabeling" as tort suits actions simply alleging breaches of duties assumed in [CBA].... In *[Allis–Chalmers Corp. v.] Lueck* [471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)] and in *Lingle v. Norge Div. of Magic Chef, Inc.* ... we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim as "independent," of the rights under the [CBA] ... that decides whether a state cause of action may go forward. Finally, we were clear that when the meaning of contract terms is not the subject of the dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.

*Livadas,* 512 U.S. at 122–23, 114 S.Ct. 2068 (internal citations omitted).

To that end, "to help preserve state authority in areas involving minimum labor standards, the Supreme Court has distinguished between claims that require interpretation or construction of a labor agreement and those that require a court simply to 'look at' the agreement." *Balcorta,* 208 F.3d at 1108; *see Livadas,* 512 U.S. at 122–23, 114 S.Ct. 2068 ("When the meaning of contract terms is not subject to dispute the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). "We have stressed that, in the context of § 301, complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta,* 208 F.3d at 1108 (internal citations omitted). "Although the line between 'reference to' and 'interpretation of' an agreement may be somewhat hazy, ... the totality of the policies underlying § 301—promoting the arbitration of labor contract disputes, securing

the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards—guides our understanding of what constitutes 'interpretation.'" *Balcorta,* 208 F.3d at 1108–09 (internal citations omitted).

■ Thus, in determining whether § 301 is implicated, the Ninth Circuit has explained that courts must first make "an inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a [CBA]. If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Burnside,* 491 F.3d at 1059. "If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless substantially dependent on analysis of a [CBA].... If such dependence exists, then the claim is preempted by [§ ] 301; if not, then the claim can proceed under state law." *Id.* Indeed, "[w]e should not interpret the doctrine of [§ ] 301 preemption so broadly as to undermine the broader precepts of federal labor policy of which enforcement of CBAs is a part. After all, the Supreme Court has termed [§ ] 301 but an 'acorn,' not a 'mighty oak.'" *Id.* at 1070.

### 1. *Plaintiff's Claims Are Grounded in State Law*

■ "First, to determine whether a particular right inheres in state law, or, instead, is grounded in a CBA, the Court has instructed us to consider the legal character of a claim, as independent of rights under the [CBA], not whether a grievance arising from precisely the same set of facts could be pursued." *Burnside,* 491 F.3d at 1059–60 (internal citations omitted). Moreover, "reliance on the CBA as an aspect of a defense is not enough to inject a federal question into an action that asserts what is plainly a state-law claim."

*Id.* at 1060; *see Caterpillar,* 482 U.S. at 398–99, 107 S.Ct. 2425 (explaining that "the plaintiff is the master of the complaint," and that if the defendant could engineer "the forum in which the claim shall be litigated" based on the substance of his defense, "the plaintiff would be master of nothing.").

■ "Second, to determine whether a state law right is substantially dependent in the terms of a CBA, ... the Court directs us to decide whether the claim can be resolved by 'looking to' versus 'interpreting' the CBA." *Burnside,* 491 F.3d at 1059–60 (internal citations omitted). The claim is preempted if the latter, but not if the former. *Id.* "Although the 'look to'/'interpret' distinction is not always clear or amenable to a bright-line test, some assessments are easier to make than others." *Id.* (internal citations omitted); *see Livadas,* 512 U.S. at 124, 114 S.Ct. 2068 (explaining that "when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). Further, "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Cramer v. Consol. Freightways, Inc.,* 255 F.3d 683, 691 (9th Cir.2001) (en banc). "Finally, in cases presenting the question whether the plaintiff's union bargained away the state law right at issue .... a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering [§ ] 301 preemption." *Burnside,* 491 F.3d at 1059–60 (internal citations omitted).

Here, Plaintiff's claims arise wholly under state law. Indeed, Plaintiff alleges only state law claims and expressly indicates that the CBA need not be referenced. (*See generally* Compl.) Moreover, because Plaintiff's claims at most, look to, rather than interpret the CBA, they are not dependent upon the CBA. Thus, § 301 preemption is clearly not implicated.

### a. *Plaintiff's Travel Time Claims*

■ California law provides employees a non-waivable, non-negotiable right to compensation for all time worked. *See* Cal. Labor Code § 1194 ("Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage of the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."); *see Burnside,* 491 F.3d at 1061 ("As a result, because the right to be compensated for employer-mandated travel exists as a matter of state law, independent of the CBAs, on this initial basis at least the employees' claims are not preempted."); *see Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000) ("We conclude that plaintiff's compulsory travel time is compensable as 'hours worked' under the Wage Order No. 14–80.").

Here, "Plaintiff alleges that Defendant failed to compensate him and other putative class members for mandatory travel to, from, and within refineries and other facilities where job sites were located." (Pl.'s Mot. 7.) Plaintiff contends that Defendant's failure to pay travel time wages "violates Labor Code § 1194 and Wage Order No. 16." (Pl.'s Mot. 7.) Plaintiff also argues that Defendant's failure violates § 17200.[3] (Pl.'s Mot. 7.) The Ninth Circuit has directly addressed this issue, most re-

---

**3.** As Plaintiff correctly notes, the § 17200 claim is a derivative claim and "exists solely as a matter of state law," meaning that no interpretation of the CBA is required and Plaintiff's § 17200 claim is not preempted by § 301. (Pl.'s Mot. 12–13.)

cently in *Burnside*, where it cited *Morillion* and explained that "the Wage Order 16–2001 contains explicit language . . . that extends the right to be compensated for compulsory travel time." *See Burnside*, 491 F.3d at 1062. Accordingly, because Plaintiff's travel time claims arise under state law and do not substantially depend on an interpretation of the CBA, they are not preempted by § 301.

### b. *Plaintiff's Second Meal Period Claims*

■ California law provides employees with the right to second meal periods when they work shifts longer than 10 hours. *See* Cal. Lab.Code § 512(a) ("An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."). In *Valles v. Ivy Hill Corporation*, the Ninth Circuit concluded: "We need not, indeed may not, construe the Ivy Hill [CBA] in order to consider whether a waiver exists because any provision of the [CBA] purporting to waive the right to meal periods would be of no force or effect: The right in question is plainly non-negotiable." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1082 (9th Cir.2005); *see also Mitchell v. Mirant Cal., LLC*, 2008 WL 501392, at *3 (N.D.Cal. Feb. 21, 2008).

Here, "Plaintiff alleges that Defendant failed to provide him and putative class members with statutorily required second meal periods for shifts longer than 10 hours." (Pl.'s Mot. 8.) Such claims are based on rights conferred by California Labor Code §§ 512(a) and 226.7, and Wage Order No. 16. *See Valles*, 410 F.3d at 1082. Thus, Plaintiff's second meal period claims arise under state law and do not substantially depend upon an interpretation of the CBA. Additionally, that the CBA includes terms that entitle employees to second meal periods is of no import. In *Lingle*, the Supreme Court expressly addressed this issue:

> In other words, even if dispute resolution pursuant to a [CBA], on one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes.

*Lingle*, 486 U.S. at 409–10, 108 S.Ct. 1877. As such, it is irrelevant that the CBA provides for similar claims under its own terms because the state law claims can be resolved without interpreting the CBA. Accordingly, § 301 does not preempt Plaintiff's second meal time claims.

### c. *Plaintiff's Third Rest Break Claims*

■ California law provides employees with the right to third rest breaks on shifts longer than 10 hours. *See* Cal. Labor Code § 226.7 ("(a) No employer shall require any employee to work during any mean or rest period mandated by an applicable order of the Industrial Welfare Commission. (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the mean or rest period is not provided."); *see* Wage Order No. 16 § 11. In *Zavala v. Scott Brothers Dairy, Inc.*, the court held that plaintiffs are not precluded from bringing to state court statutory claims based on California's laws protecting rest periods and wage-stub itemization. *Zavala v. Scott Bros. Dairy, Inc.*, 143 Cal. App.4th 585, 49 Cal.Rptr.3d 503, 510 (Cal.

Ct.App.2006). The court explained: "Although certainly plaintiff could have and did grieve their rest-break claim under the CBA, as the Dairy observes, where nonnegotiable, nonwaivable, minimum statutory labor standards are at issue, plaintiffs are not precluded from now vindicating all of these individual rights in court." *Id.*

Here, "Plaintiff alleges that Defendant failed to provide him and putative class members with statutorily required third rest breaks on shifts longer than 10 hours." (Pl.'s Mot. 10.) Because Plaintiff's third rest break claims are based on rights conferred by California Labor Code § 226.7(a) and Wage Order No. 16, they exist as a matter of state law. Similarly, they are not substantially dependent upon an interpretation of the CBA. Additionally, that the CBA includes terms that entitle employees to third rest breaks is of no import. As mentioned above, *Lingle* stands for the proposition that it is irrelevant that the CBA provides similar claims under its own terms where the state law claims can be resolved without any interpretation of the CBA. *Lingle*, 486 U.S. at 409–10, 108 S.Ct. 1877. Accordingly, because Plaintiff's third rest break claims arise under state law, they are not preempted by § 301.

### d. *Plaintiff's Remaining Claims*

■ California law provides employees with the right to accurate, itemized wage statements. *See Zavala*, 49 Cal.Rptr.3d at 510; *see* Cal. Labor Code § 226 ("Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing . . .") Here, Plaintiff alleges that Defendant failed to provide pay wages for mandatory travel time, failed to provide required second meals, and failed to provide third rest breaks, "all of which are violations of state law, as discussed above." (Pl.'s Mot. 11.) Plaintiff further contends that these "claims will be resolved by examining the wage statements and determining whether they accurately reflect all time worked and wages earned." (Pl.'s Mot. 11.) The Court is satisfied that this analysis can be accomplished without any reference to the CBA, such that Plaintiff's California Labor Code § 226 claims are not substantially dependent on the CBA, and consequently, they are not preempted by § 301.

■ Similarly, Plaintiff's claims for waiting time penalties and improper weekly pay practices under California Labor Code §§ 201–203 and 204(b) arise under California law and are not waivable. *See* Cal. Labor Code § 201 ("If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."); *see* Cal. Labor Code § 202 ("If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."); *see* Cal. Labor Code § 203 ("If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."); *see* Cal. Labor Code § 204 ("All wages, other than those mentioned in [§§ ] 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month,

on days designated in advance by the employer as the regular paydays.").

In *Balcorta*, the Ninth Circuit concluded that the timeliness of payment following discharge is controlled only by the state statute:

> It is true that the [CBA] contains a paragraph that sets forth time requirements governing the payment of wages after discharge. We need not decide whether the [CBA's] provision governing the payment of wages is ambiguous and requires interpretation, however, because § 201.5 of the Labor Code governs the timeliness of payment following discharge. Accordingly, whether a violation has occurred is controlled only by the provisions of the state statute and does not turn on whether the payment was timely under the provisions of the [CBA].

*Balcorta*, 208 F.3d at 1110–11. Thus, because Plaintiff's claims under Labor Code Sections §§ 201–03 and 204(b) are derivative of Plaintiff's time travel, second meal period, and third rest break claims that fall under state law, no interpretation of the CBA is required here, either. Accordingly, Plaintiff's claims arising under Labor Code Sections §§ 201–03 and 204(b) are not preempted by § 301.

### 2. *Arbitration Clause in the CBA*

 The existence of an arbitration clause in a CBA does not necessarily implicate § 301 preemption. *See Livadas*, 512 U.S. at 128, 114 S.Ct. 2068; *see Caterpillar*, 482 U.S. at 399 n. 15, 107 S.Ct. 2425. In *Livadas*, the Supreme Court explained that there was no suggestion that "the parties to the [CBA] understood their arbitration pledge to cover [the plaintiff's] state-law claims." *Livadas*, 512 U.S. at 125, 114 S.Ct. 2068. In *Caterpillar*, the Supreme Court concluded:

It is true that when a defense to a state claim is based on the terms of a [CBA], the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of ... a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court ... a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

*Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. 2425.

In *Dall v. Albertson's, Inc.*, the Ninth Circuit concluded that a settlement agreement was only relevant to the defendants' defenses of waiver, release, and duty to arbitrate. *Dall v. Albertson's, Inc.*, 234 Fed.Appx. 446, 449 (9th Cir.2007). Thus, "[b]ecause [the defendants] [looked] to the [s]ettlement [a]greement's arbitration and release provisions in 'mounting their defenses,' there [was] no preemption and removal was improper under *Caterpillar* and *Cramer*." *Id.; see Cramer*, 255 F.3d at 691 (citing *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. 2425) (holding that "[i]f the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.").

 Defendant's reliance on *14 Penn Plaza LLC v. Pyett* is also misplaced. *14 Penn Plaza LLC v. Pyett*, —— U.S. ——, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009).[4]

---

**4.** The Court cites to the Supreme Court Reporter because *14 Penn Plaza LLC v. Pyett* has not yet been published in the official U.S. Reports.

In *14 Penn Plaza*, the Supreme Court held that a provision in a CBA that clearly and unmistakably required union members to arbitrate Age Discrimination in Employment Act ("ADEA") claims was enforceable as a matter of law. *Id.* at 1473. First, *14 Penn Plaza* did not discuss 301 preemption. (Pl.'s Reply 5.) More importantly however, in *14 Penn Plaza*, the relevant CBA's arbitration agreement was clearly and unmistakably stated. *14 Penn Plaza*, 129 S.Ct. at 1461. The CBA provided in relevant part: "There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law. . . . All such claims shall be subject to the grievance and arbitration procedures as the sole and exclusive remedy for violations." *Id.* Further, unlike *14 Penn Plaza*, the CBA here does not clearly or unmistakably provide that Plaintiff's state law claims are subject to binding arbitration. The CBA provides:

> The Company and the Union will make every effort to resolve differences and issues through discussion and mutual agreement. Should any controversy, dispute or disagreement arise during the term of this Agreement, there shall be no form of economic activity by either party against the other because of such controversy, disputes, or disagreement, but the difference shall be adjusted pursuant to these Grievance and Arbitration Procedures.

(Def.'s Opp'n 3.) Thus, compared to *14 Penn Plaza*, the CBA here does not clearly or unmistakably require arbitration of Plaintiff's state law claims. *14 Penn Plaza*, 129 S.Ct. at 1474. *14 Penn Plaza* also declined to overturn *Gardner–Denver's* instruction, "that where a [CBA] does not provide for arbitration of statutory claims, such claims should be given de novo consideration in federal court." *Markell v. Kaiser Foundation Health Plan of N.W.*,

2009 WL 3334897, at *8 (D.Or. Oct. 15, 2009). "Indeed, to hold otherwise would produce the illogical result that arbitral findings could preclude litigation of elements of statutory claims where the arbitration addressed unrelated contract-based claims, whereas arbitration of precisely the same statutory claim later presented in federal court would be without preclusive effect." *Id.* Accordingly, pursuant to *Caterpillar*, *Dall*, and *Cramer*, because the CBA relates only to Defendant's asserted defenses, and does not clearly or unmistakably interpret Plaintiff's state law claims or require arbitration of Plaintiff's state law claims, there is no § 301 preemption and removal is improper.

### III. *RULING*

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**. This action is **REMANDED** to state court for lack of subject matter jurisdiction.

IT IS SO ORDERED.