Filed 10/17/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| GEORGE MELENDEZ et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>SAN FRANCISCO BASEBALL ASSOCIATES LLC,<br><br>    Defendant and Appellant. | A149482<br><br>(City & County of San Francisco Super. Ct. Nos. CGC-13-530672, CGC-15-549146) |

Defendant San Francisco Baseball Associates LLC (the Giants)[1] appeals from the denial of its motion to compel arbitration of the wage and hour claims of plaintiff George Melendez.[2] Plaintiff, a security guard employed by the Giants at AT&T Park, contends that he and other security guards were employed "intermittingly" for specific job assignments (baseball games or other events) and were discharged "at the end of a homestand, at the end of a baseball season, at the end of an inter-season event like a fan fest, college football game, a concert, a series of shows, or other events," and that therefore under Labor Code section 201 were entitled to but did not receive immediate

---

[1] The Giants were erroneously sued as "San Francisco Giants Baseball Club LLC." The correct entity was originally San Francisco Baseball Associates LP, which has subsequently undergone restructuring and is now the San Francisco Baseball Associates LLC.

[2] Separate actions were brought by plaintiffs Wilfredo Rivas and George Melendez. Rivas having been terminated by the Giants for misconduct, the parties stipulated that the actions would be consolidated and that Melendez would be designated as the class representative of the putative class action. Melendez is the employee whose situation is addressed in the briefing in the trial court and this court. The claims of the two plaintiffs are identical.

1

payment of their final wages upon each such "discharge." The Giants contend that payment immediately after each such event is not required because under the terms of the collective bargaining agreement (CBA) between the Giants and the Service Employees International Union, United Service Workers West of San Francisco (the union), Melendez and all such security guards are not intermittent employees but are "year-round employees who remain employed with the Giants until they resign or are terminated pursuant to the CBA." The Giants moved to compel arbitration or to dismiss the action under the arbitration provision of the CBA and on the ground that the action is preempted by section 301 of the Labor Management Relations Act, 29 United States Code, section 185(a). The trial court rejected both grounds. We agree that the present dispute is not within the scope of the arbitration provision in the CBA but conclude that arbitration is required by section 301 of the Labor Management Relations Act.

## Background

The following facts were established by declarations submitted in support of the Giants' motion and are largely undisputed.

AT&T Park in San Francisco is used by the Giants for baseball games and for concerts and other events during the off-season and between "homestands" (defined as between three and 10 or more consecutive games at the home ballpark). Numerous non-baseball events are held at the ballpark throughout the year.

Melendez has been employed by the Giants as a security guard at AT&T Park since March 2005. As required by the terms of the CBA he has at all times been a member of the union and the terms of his employment are governed by the provisions of the CBA.

The CBA confirms that the union is the sole collective bargaining agency for security personnel employed by the Giants at AT&T Park. The agreement defines several classifications of employees. "Regular" employees are the 13 employees who in 2012 worked the most total hours and who continue to work at least 1700 hours in succeeding years. These employees have priority in scheduling over other classifications of employees and receive benefits not provided to other employees. Any vacancy in these

2

13 positions "shall be filled by the person who worked the most hours in the previous year from among those employees not classified as 'regular employees.' " All other employees (other than "supervisory" employees and "probationary" employees) are labelled "seasonal" employees. The CBA also defines "senior seasonal" employees (seasonal employees who have worked a minimum of 300 hours each year for the last five years) and "super senior seasonal" employees (seasonal employees who have worked a minimum of 300 hours each year for the last 10 years), who receive increased hourly wages.

All security personnel are required to meet specified employment qualifications. These qualifications include obtaining a valid California Guard Card, which requires "enrolling in and completing necessary coursework and training, passing the required examination, passing the required background check" and meeting any other applicable requirements. The CBA also provides that "All new applicants for employment as security personnel shall be subject to pre-hire drug screening and background investigation." The Giants "have the right to discipline or discharge any regular, senior seasonal or seasonal employee for cause." The term of the CBA is from January 1, 2013, through December 31, 2017, and from year-to-year thereafter unless either party requests modification 60 days prior to the anniversary date.

The CBA contains a schedule of hourly wages for all classifications of employees. The agreement provides that the Giants "retain[] the right to establish what shall constitute a normal workday and to schedule employees at its discretion." All non-probationary employees "shall be entitled to overtime pay for Martin Luther King Jr. Day, President's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas & New Year's Day."

According to the Giants' Senior Director of Security, "security guards do not turn in their uniforms or badges at the end of each homestand or baseball season." They "do not reapply for work or submit new hire paperwork at the beginning of each homestand or baseball season. Nor do they have to undergo security background checks at the beginning of each homestand or baseball season. [¶] . . . The Giants do not terminate their

3

security guards at the end of each homestand or baseball season. On the contrary, security guards remain on the Giants' payroll between homestands and baseball seasons, unless their employment otherwise ends (by resignation or pursuant to the CBA)." Many Giants' security guards "regularly work between baseball seasons or year-round. . . . Based on review of his payroll records, [Melendez] himself regularly worked between baseball seasons. In fact, he worked *every pay period* in 2015 and *each and every pay period* in 2016 to date, often working almost as many hours in the 'off-season' as those during the baseball seasons." (Italics in original.)

Without having invoked the grievance procedures specified in the CBA, plaintiffs filed their complaints with common allegations. Melendez alleges that he and other security guards are hired by the Giants "intermittently during the baseball season and throughout the rest of the calendar year" and that the Giants fail to comply with Labor Code section 201 "in no less than three (3) ways. (1) At the end of the baseball season defendants do not pay intermittingly employed persons on the last day they work during the season. (2) During the baseball season, defendants do not immediately pay intermittently employed employees on the last day they work during a home-stand. (3) Between baseball seasons, when intermittently employed persons are employed for events such as concerts, college football games, theatrical performances, fan appreciation days, a run of Cirque du Soleil shows, etc., defendants do not immediately pay intermittently employed employees at the end of their work at these events."

The Giants have timely appealed from the trial court's denial of its motion to compel arbitration of these claims as assertedly required by the arbitration provision of the CBA and by section 301 of the Labor Management Relations Act.

## Discussion

1. *The dispute does not come within the arbitration provisions of the CBA.*

Section Fourteen of the CBA, entitled Grievance & Arbitration, requires an effort to resolve grievances informally and, failing informal resolution, arbitration of the grievance. A "grievance" is defined as "any dispute between the employer and an

employee or the union, regarding the interpretation, application or alleged violation of any of the terms of this agreement." The complaint is this action does not allege a violation of the terms of the CBA. The complaint is based solely on the alleged violation of Labor Code section 201. The trial court correctly ruled that the alleged statutory violation does not come within the scope of the contractual arbitration provision. (E.g., *Flores v. Axxis Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 808-810.)

2. *Section 301 of the Labor Management Relations Act requires that the dispute be arbitrated.*

"[A] long line of United States Supreme Court cases hold[] that under section 301 [of the Labor Management Relations Act], although state courts have concurrent jurisdiction over controversies involving agreements between unions and employers, the substantive law governing union-management labor relations is exclusively a matter for arbitration under federal law. [Citations.] . . . [¶] The Ninth Circuit, sitting en banc, recently summarized section 301 preemption law as follows: 'If the plaintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted. . . . [T]he need to interpret the CBA must inhere in the nature of the plaintiff's claim,' however, in order for preemption to apply. [Citation.] '[I]f the claim may be litigated without reference to the rights and duties established in the CBA . . . [and] plainly is based on state law,' it is not preempted, even if 'the defendant refers to the CBA in mounting a defense.' " (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 762-763, fn. omitted.) As the Ninth Circuit recognized in *Newberry v. Pacific Racing Assn.* (9th Cir. 1988) 854 F.2d 1142, 1147, section 301 of the Labor Management Relations Act "does not preempt every employment dispute tangentially involving the labor agreement." The test of whether preemption applies is: "Does the application of state law 'require[] the interpretation of a collective-bargaining agreement,'[citation], or 'substantially depend[] upon analysis of the terms of the agreement made between the parties in a labor contract?' " (854 F.2d at p. 1147.)

5

Here, plaintiffs seek the recovery of penalties under Labor Code section 203 on the ground that the Giants' failure to pay security guards immediately after the termination of each instance of what they describe as "intermittent employment" violates Labor Code section 201.[3] Section 201, subdivision (a) begins: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."[4] The Giants' position is that it does not "discharge" its security guards after every game, homestand, baseball season or event at which the guards work. Rather, it contends, the guards remain employed under the provisions of the CBA, subject to scheduling by the Giants, unless and until a guard resigns or is terminated for cause under the terms of the CBA.

Melendez's contrary position is based upon our Supreme Court's decision in *Smith v. Superior Court (L'Oreal)* (2006) 39 Cal.4th 77. In *L'Oreal*, the court concluded that "an employer effectuates a discharge within the contemplation of Labor Code sections 201 and 203, not only when it fires an employee, but also when it releases an employee upon the employee's completion of the particular job assignment or time duration for which he or she was hired." (39 Cal.4th at p. 90.) In that case, the plaintiff was hired to be a "hair model" at a single show featuring the employer's products, with the understanding that she would be paid $500 for the one day's work. (*Id.* at p. 81.) The employer waited over two months before paying the plaintiff, who successfully claimed that Labor Code

---

[3] Labor Code section 203 provides that an employer's willful failure to pay wages to a discharged employee in accordance with Labor Code section 201 subjects the employer to penalties.

[4] Labor Code section 201, subdivision (a) continues with this exception: "An employer who lays off a group of employees by reason of the termination of seasonal employment in the curing, canning, or drying of any variety of perishable fruit, fish or vegetables, shall be deemed to have made immediate payment when the wage of said employees are paid within a reasonable time as necessary for computation and payment thereof; provided, however, that the reasonable time shall not exceed 72 hours . . . ." Other sections provide different final payment provisions for specified classes of employees, none of which apply here. (Lab. Code, §§ 201.3, 201.5, 201.7, 201.9.) Melendez argues that the absence of such a provision applicable to his employment emphasizes that the requirement of immediate payment applies in this case.

sections 201 and 203 "protect employees such as herself who are hired for a particular job assignment or time duration, and that the statutory discharge element is met when the employment relationship is terminated upon completion of the specified employment." (39 Cal.4th at p. 82.) Melendez asserts that *L'Oreal* applies to his situation, while the Giants contend the case is inapplicable because its security guards are not hired "for a particular job assignment or time duration."

Turning to the preemption issue, the trial court held that resolution of the controversy does not require interpretation of the CBA, but simply a determination of whether the security guards are discharged within the meaning of Labor Code section 201 at the conclusion of an event or series of baseball games. The court observed that the dispute can be resolved without interpretation of "any specific language in the CBA." It reasoned that none of the provisions in the CBA, such as those "relat[ing] to vacations; how employees are assigned work; and so on . . . [have] any connection . . . to whether plaintiffs here were or were not terminated, the core (if not only) factual issue pertinent to the statutory claims."

We disagree with this analysis. While resolution of the controversy may not turn on the interpretation of any specific language in the CBA, it does not follow that the meaning of the CBA is irrelevant to the outcome of the dispute. The underlying legal issue, as all parties recognize, is whether plaintiffs were "discharged" within the meaning of Labor Code section 201. But in order to determine whether the conclusion of a baseball game or season or other event constitutes a discharge as interpreted in *L'Oreal,* it is necessary to first determine the terms of employment. (*Smith v. Superior Court* (*L'Oreal*), *supra*, 39 Cal.4th 77.) In *L'Oreal* the plaintiff was hired for only a single day's work, so that when the day ended her employment terminated and she was therefore discharged within the meaning of the statute. Here, plaintiffs are union members and the terms of their employment are governed by the CBA. It is essential to determine, therefore, whether the CBA provides for employment of security guards for only a single game or homestand or season or other event, or whether the agreement contemplates extended employment from season to season, event to event, year to year, recognizing

7

that not every day will be a day of work. If the latter, there is no termination of employment, and therefore no "discharge," at the conclusion of each baseball game, homestand, season or other event.

Although no provision of the CBA provides an explicit answer, the duration of the employment relationship must be derived from what is implicit in the agreement. There are numerous provisions from which inferences may logically be drawn. The classification of employees is based on the number of hours worked in a year, itself suggesting that employment is considered to continue beyond the conclusion of each event. Continued classification as a "regular" employee requires at least 1,700 hours of work in a year. "All employees shall be probationary employees for their first five hundred (500) hours of work with the Giants." Employees rise to "senior" and "super senior" status by working a minimum of 300 hours each year for the last five or ten years, hardly possible if each event is deemed a separate employment. As indicated above, the CBA provides that "All new applicants for employment as security personnel shall be subject to pre-hire drug screening and background investigation"; the language seems to imply that such screening and investigation will occur only once prior to the start of a single employment, and practice under the agreement confirms this interpretation. The specification of holidays in the CBA certainly implies year-long employment. And under the CBA, the Giants have the right to discharge an employee only for cause. Other provisions may also support inferences as to the intended term of employment. We do not here purport to definitively interpret the CBA but simply emphasize that resolution of the controversy requires interpretation of the scope of employment under the CBA.

Other cases on which Melendez relies for the argument that mere reference to a collective bargaining agreement does not give rise to preemption under section 301 of the Labor Management Relations Act are distinguishable. In *Livadas v. Bradshaw* (1994) 512 U.S. 107, the plaintiff's claim under Labor Code sections 201 and 203 was not preempted because there was no need to look to the terms of the collective bargaining agreement under which plaintiff had been employed to determine whether section 201 had been violated. There was no dispute that plaintiff had been terminated and that final

payment had been delayed. "Beyond the simple need to refer to bargained-for wage rates in computing the penalty, the collective-bargaining agreement [was] irrelevant to the dispute (if any) between Livadas and [the employer]." (512 U.S. at p. 125.) The Commissioner of Labor in that case had erroneously concluded that she was prohibited from enforcing section 201 whenever the employee had worked under a collective bargaining agreement, even if there was no dispute as to the meaning of the agreement or need to interpret it to determine liability under the statute. Similarly, in *Balcorta v. Twentieth Century-Fox Film Corp.* (9th Cir. 2000) 208 F.3d 1102, 1110, "determining whether Balcorta was discharged [did] not require a court to interpret the collective bargaining agreement between Fox and Local 728, and thus [did] not render Balcorta's claims subject to complete preemption." The other cases cited by Melendez are to the same effect. (*Meyer v. Irwin Industries, Inc.* (C.D. Cal. 2010) 723 F.Supp.2d 1237, 1245 ["analysis [of plaintiff's Labor Code claims] can be accomplished without any reference to the CBA"]; *Avalos v. Foster Poultry Farms* (E.D. Cal. 2011) 798 F.Supp.2d 1156, 1162 ["Here, the CBA does not contain a complex wage structure that requires analysis to resolve the claims."]; *Bonilla v. Starwood Hotels & Resorts Worldwide, Inc.* (C.D. Cal. 2005) 407 F.Supp.2d 1107, 1112, 1113 ["Plaintiff's claims by themselves do not require an analysis of the CBA"; "Defendant does not demonstrate that the CBA must be 'interpreted' rather than simply referenced to determine unpaid compensation for missed breaks"].)

Since in this case application of Labor Code section 201 necessarily " 'require[s] the interpretation of [the CBA]' " and " 'substantially depend[s] upon analysis of [its] terms' " (*Newberry v. Pacific Racing Assn., supra,* 854 F.2d at p. 1147), federal preemption applies and the dispute must be resolved pursuant to the grievance procedure and arbitration under the CBA.

**Disposition**

The order denying the motion to compel arbitration is reversed.

9

_____

Pollak, J.

We concur:


_____

McGuiness, P. J.


_____

Siggins, J.


A149482

10

Trial court:                                   San Francisco County Superior Court

Trial judge:                                   Honorable Curtis E. A. Karnow

Counsel for plaintiff and respondent:          Dennis F. Moss
                                               Sahag Majarian II

Counsel for defendant and appellant:           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
                                               Nancy Pritikin
                                               Babak Yousefzadeh
                                               Brian S. Fong

A149482

11