**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID VALLES; JOHN BRESLIN, and
members of the general public
similarly situated,
*Plaintiffs-Appellants,*

v.

IVY HILL CORPORATION,
*Defendant-Appellee.*

No. 03-55440

D.C. No.
CV-02-08528-MLR

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
December 7, 2004—Pasadena, California

Filed June 6, 2005

Before: Stephen Reinhardt, Cynthia Holcomb Hall, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Howard Z. Rosen & Lazaro Cuevas, Posner & Rosen LLP, Los Angeles, California, for the appellants.

Jamie J. Johnson, Bryan Cave LLP, Santa Monica, California, for the appellee.

## OPINION

REINHARDT, Circuit Judge:

David Valles and John Breslin sued their employer, the Ivy Hill Corporation, for failing to provide them and other unionized employees with adequate meal periods and rest breaks in violation of California's Labor Code and wage regulations. Ivy Hill removed the action to federal court on the ground that the meal period claims were "completely preempted" by federal labor law. The district court denied the employees' motion to remand to state court and granted summary judgment in favor of Ivy Hill. Valles and Breslin appeal. We reverse.

## I. BACKGROUND

Ivy Hill has been operating a Los Angeles printing facility since 1966. Since that time, its employees have been represented by the Graphic Communications International Union, Local 404 (or a predecessor union). The terms and conditions of employment are governed by a collective bargaining agreement, which does not address rest breaks but includes two provisions regarding meal periods: One mandates non-working meal periods and the other provides for time and a half payment in the event an employee must work during a regularly scheduled meal period.[1] Despite this contract lan-

---

[1] Section 8.2 of the collective bargaining agreement reads:

> No employee shall be compelled to work more than five (5) hours without being permitted to have one-half (1/2) hour for lunch. No presses will operate during lunch time, except in accordance with the manning table.

guage, from the time that the printing facility opened until June 2002, employees who worked on the first shift were not afforded lunch periods. Instead, they worked through lunch and were paid at their normal hourly rate for their working lunches. No employee filed a grievance about this practice. In June 2002, Ivy Hill instituted non-working, unpaid lunch periods.

Three months later, employees Valles and Breslin brought a class action lawsuit in state court, alleging that until June 2002 Ivy Hill had failed to provide them with uninterrupted thirty minute meal periods and ten minute rest breaks. The employees based their claims entirely on the provisions of state law and not on any terms contained in their collective bargaining agreement. They sought penalties back to October 1, 2000, the date upon which they contend that the state's meal period and rest break penalty provisions became applicable. Ivy Hill removed the case to federal court on the ground that the employees' meal period claims were completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2005). The employees moved the district court to remand the matter to state court, while Ivy Hill moved for summary judgment on the ground of preemption. The district court denied the employees' motion to remand and granted summary judgment in favor of Ivy Hill. The employees appealed.[2]

---

Section 11.1(f) reads:

> If an employee is specifically requested by the Employer to work during his/her regularly scheduled lunch period (where such is observed) and is then required by the Employer to take a lunch period later in the shift, the employee shall be paid one and one-half (1-1/2) times his hourly rate for the lunch period worked.

[2]Ivy Hill does not contend that the employees' rest period claim is preempted. Rather, it relies on the doctrine of supplemental jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Notably, the district court never addressed the rest period claim, although it granted summary judgment for Ivy Hill. The employees requested clarification, but apparently the district court did not respond.

We have jurisdiction under 28 U.S.C. § 1291 and review the district court's finding of preemption under § 301 *de novo*. *Cramer v. Consolidated Freightways,* 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (as amended).

## II.   DISCUSSION

### A.   *Complete Preemption Doctrine*

Federal jurisdiction typically exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). A federal law defense to a state-law claim does not confer jurisdiction on a federal court, even if the defense is that of federal preemption and is anticipated in the plaintiff's complaint. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983). This rule makes a plaintiff the "master of his complaint": He may generally avoid federal jurisdiction by pleading solely state-law claims. *Balcorta*, 208 F.3d at 1106.

An exception to the general rule exists, however, when the preemptive force of a statute is so strong that it "completely preempt[s]" an area of state law. *Id.* at 1107; *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). In such circumstances, federal law displaces a plaintiff's state-law claim, no matter how carefully pleaded. *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052 (9th Cir. 2003). This is because the "claim purportedly based on . . . [a] preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta*, 208 F.3d at 1107 (citing *Franchise Tax Bd.*, 463 U.S. at 24).

**[1]** The complete preemption exception to the well-pleaded complaint rule is applied primarily under § 301 of the LMRA. *Id.* That section vests jurisdiction in federal courts over

"[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Although the text of § 301 contains only a jurisdictional grant, the Supreme Court has interpreted it to compel the complete preemption of state law claims brought to enforce collective bargaining agreements. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968). In addition, although the language of § 301 is limited to "[s]uits for violation of contracts," the Supreme Court has expanded § 301 preemption to include cases the resolution of which "is substantially dependent upon analysis of the terms of [a collective bargaining agreement]." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also Franchise Tax Bd.*, 463 U.S. at 23; *see also Balcorta*, 208 F.3d at 1107-08 (discussing development of Supreme Court precedent on complete preemption); *Cramer*, 255 F.3d at 689-90 (same).

One reason for expanding complete preemption beyond the textual confines of § 301 is to promote uniformity in the interpretation of collective bargaining agreements and to generate and preserve a body of consistent federal labor law. *See Lingle v. Norge Div. of Magic Chef, Inc*. 486 U.S. 399, 405-06 (1988); *Livadas v. Bradshaw*, 512 U.S. 107, 121-23 (1994). Another is to promote the federal policy favoring arbitration and to prevent litigants from using state law litigation to side-step or alter the negotiated provisions of a collective bargaining agreement, including the dispute resolution procedures. *See Lueck,* 471 U.S. at 211; *Livadas*, 512 U.S. at 123; *see also Humble v. Boeing Co.*, 305 F.3d 1004, 1007 (9th Cir. 2002); *Balcorta*, 208 F.3d at 1108.

**[2]** Nonetheless, "the Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship; § 301 has not become a 'mighty oak' that might supply cover to employers from all substantive aspects of state law." *Humble*, 305 F.3d at 1007

(citing *Lingle*, 486 U.S. at 408-09; *Livadas*, 512 U.S. at 122). Thus, "not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted." *Associated Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers*, 109 F.3d 1353, 1357 (9th Cir. 1997) (as amended). In particular, the Court has sought to preserve state authority in areas involving minimum labor standards. As the Court wrote in *Livadas*, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." 512 U.S. at 123. A claim brought in state court on the basis of a state-law right that is "independent of rights under the collective-bargaining agreement," will not be preempted, even if "a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* (internal citations omitted). In addition, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 124 (citing *Lingle*, 486 U.S. at 413, n.12). Thus, in order for complete preemption to apply, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691; *see also Gregory,* 317 F.3d at 1052; *Humble*, 305 F.3d at 1008.

**[3]** Finally, we have held that "§ 301 does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights" conferred on individual employees. *Balcorta*, 208 F.3d at 1111.[3] As the Supreme Court has

---

[3]On at least two occasions, the Supreme Court has declined to reach the question whether a waiver of a nonnegotiable state right is permissible under § 301. Both times it noted that, at a minimum, any waiver would have to be clear and unmistakable but that no such waiver existed in the case before it. *See Livadas*, 512 U.S. at 125; *Lingle*, 486 U.S. at 409-10, n.9. In *Balcorta*, we resolved the question left open by the Court, holding that if a right that the state may lawfully confer upon individual workers is nonnegotiable under state law, the right cannot be waived in a collective bargaining agreement. 208 F.3d at 1111. We reaffirm that holding here.

repeatedly emphasized, "Congress is understood to have leg-islated against a backdrop of generally applicable [state] labor standards." *Livadas*, 512 U.S. at 123 n.17. Section 301 must not be construed to give employers and unions the power to displace state regulatory laws. *See Cramer*, 255 F.3d at 697; *Humble*, 305 F.3d at 1009; *Associated Builders & Contractors,* 109 F.3d at 1357-58. Where, however, under state law waiver of state rights may be permissible, "the CBA must include 'clear and unmistakable' language waiving the covered employee's state right 'for a court even to consider whether it could be given effect.' " *See Cramer*, 255 F.3d at 692 (quoting *Livadas*, 512 U.S. at 125).

## B.   The right to meal periods under California State Law

Ivy Hill makes two primary arguments to support its position that the employees' state-law claims for meal period penalties are completely preempted. First, it contends that the state statutes and regulations affording the right to meal periods do not apply to workers covered by collective bargaining agreements, and therefore the employees' claim arises from their contract, not from state law, and is preempted under § 301. Alternatively, it contends that even if the state-established right to meal periods does apply to workers covered by collective bargaining agreements, the right is still negotiable and it can be, and has been, waived in the collective bargaining agreement. It also argues that resolution of the waiver issue requires the interpretation of the agreement, including its history and past practice, and that the claim is preempted for this reason as well.

### 1.   The state law right to meal periods applies to employees covered by collective bargaining agreements.

We begin with an examination of California statutes, regulations, and case law regarding meal periods in order to determine whether Ivy Hill is correct that workers covered by

collective bargaining agreements are not covered by the state law right to meal periods and penalties and that their claim must therefore be based on the collective bargaining agreement. For over half a century, the Industrial Welfare Commission ("IWC") — the state agency responsible for promulgating regulations that govern wages, hours, and working conditions in California — has guaranteed work-free meal periods to manufacturing workers in California, including those covered by collective bargaining agreements, pursuant to its authority under § 1173 of the Labor Code. *See* IWC Wage Order 1-2001, Cal. Code Regs. tit. 8 § 11010 (2005); *Cal. Mfrs. Ass'n. v. IWC*, 167 Cal. Rptr. 203, 215 (Cal. Ct. App. 1980); *see also IWC v. Super. Ct. of Kern County*, 613 P.2d 579, 601 (Cal. 1980) (in bank). In 1999, the legislature codified the existing wage order requirements regarding meal periods when it passed the "Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999." 1999 Cal. Stat., ch. 134 (A.B. 60), §6 (codified at Cal. Lab. Code § 512).[4] The Act included various other provisions, some of which, on their face, are difficult to reconcile. As Ivy Hill points out, the Act contained a provision that appeared to exempt workers covered by collective bargaining agreements who earned over a certain rate of pay from the entire chapter of the labor code. *See* 1999 Cal. Stat., ch. 134, §8 (codified at Cal. Lab. Code

---

[4](a) Section 512 of the California Labor Code reads:

(a)   An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. . . .

(b)   Notwithstanding subdivision (a), the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees.

Cal. Lab. Code § 512.

§ 514). However, the Act also authorized the IWC to adopt or amend existing orders relating to meal periods and made clear that the new law was not "intended to restrict the Industrial Welfare Commission in its continuing duties pursuant to Section 1173." 1999 Cal. Stat., ch. 134, §§ 10, 11 (codified at Cal. Lab. Code §§ 516, 517).

In June 2000, following public hearings, the IWC amended the wage order that had, for years, guaranteed meal breaks by adding a penalty provision. Effective October 2000, employers were required to pay employees one hour's pay for each day on which they did not receive a meal period in accordance with the regulations. *See* IWC Wage Order 1-2001, Cal. Code Regs. tit. 8, § 11010*; see also* IWC's "Statement as to the Basis [for Wage Order 1]", *available at* http://www.dir.ca.gov/IWC/statementbasis.htm). The amended order left no doubt that it applied to workers covered by collective bargaining agreements: The order did not include any blanket exemption for workers covered by collective bargaining agreements, but rather it expressly provided for its application to such workers. Specifically, the order declared that workers covered by collective bargaining agreements could agree to a meal period that commences after six hours of work (as opposed to five hours of work for workers without collective bargaining agreements).[5] Furthermore, although the

---

[5]Part 11 of the amended Wage Order provides:

   (A)  No employer shall employ any person for a work period of more than (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. In the case of employees covered by a valid collective bargaining agreement, the parties to the collective bargaining agreement may agree to a meal period that commences after no more than six (6) hours of work.

   . . .

   (C)  Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on

amended wage order created several exemptions for particular industries and for employees who are unable to take lunch breaks due to the nature of their work, printing press employees were given no special exemption.[6]

[4] The California state legislature subsequently codified the amended meal period requirements and the penalties created by Wage Order 1-2001. *See* Act of Sept. 29, 2000 Cal. Stat., ch. 876 (A.B. 2509), § 7 (codified at Cal. Lab. Code § 226.7).[7] In so doing, it made clear that the substantive provi-

duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D)  If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

IWC Wage Order 1-2001, Cal. Code Regs. tit. 8, § 11010, pt. 11. The IWC also created similar penalties for the denial of rest periods. *See* IWC Wage Order 1-2001, Cal. Code Regs. tit. 8, § 11010, pt. 12.

[6]Although Ivy Hill notes that in the past, turning off the printing machines for lunch was not feasible, it concedes that printing press technology changed in the 1990s making non-working lunches possible.

[7]The new provision read:

(a)  No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b)  If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Cal. Lab. Code § 226.7.

sions mandating meal periods applied to all employers, including signatories to collective bargaining agreements, Cal. Lab. Code § 226.7, and that the statutory requirements could not "in any way be contravened or set aside by a private agreement, whether written, oral, or implied." Cal. Lab. Code § 219. In the context of § 219 and § 226.7 of the Labor Code, as well as Wage Order 1-2001, § 514's apparent statement that workers covered by collective bargaining agreements were not covered by the entire § 500 chapter of the Labor Code, was contradictory and confusing.

**[5]** Recognizing the ambiguity that it had created, the legislature passed a new bill that clarified that § 514 was not intended to create a blanket collective bargaining exemption for *all* of chapter 500 or to take away the authority of the IWC to make wage orders applicable to all employers, including those signatory to collective bargaining agreements. Rather, the legislature declared that § 514 was intended to exempt workers covered by a collective bargaining agreement from "specified code sections relating to compensation for overtime work and authorizing the adoption of an alternative workweek schedule." Act of Aug. 6, 2001, 2001 Cal. Stat., ch. 148 (S.B. 1208) § 1 (amending § 514). In clarifying the existing law, the legislature "confirm[ed] that IWC retains its authority to establish regulations regarding wage and hour matters for employees covered by a collective bargaining agreement." California Bill Analysis, S.B. 1208 Assem., 6/14/2001.[8] Thus, the legislature made it clear that the meal period provisions remained applicable at all times to employees covered by collective bargaining agreements.

We must next consider whether the legislature's clarification may be given effect. Under California law, as under fed-

---

[8]*See also* California Bill Analysis, S.B. 1208 Sen., 6/14/2001; California Bill Analysis, S.B. 1208 Sen., 5/29/2001; California Bill Analysis, S.B. 1208 Sen., 5/21/2001; California Bill Analysis, S.B. 1208 Sen., 4/25/2001.

eral law, statutes do not operate retrospectively unless the legislature plainly intended them to do so. *W. Sec. Bank v. Super. Ct.*, 933 P.2d 507, 513 (Cal. 1997) (citing *Evangelatos v. Super. Ct.*, 753 P.2d 585, 596-97 (Cal. 1988)). The presumption against retroactive legislation is "deeply rooted in our jurisprudence" because "individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). However, "a statute that merely *clarifies*, rather than changes, existing law" may be "applied to transactions predating its enactment." *W. Sec. Bank*, 933 P.2d at 514; *see also Vasquez v. N. County Transit Dist.*, 292 F.3d 1049, 1056 (9th Cir. 2002) (as amended).

The California Supreme Court has held that the legislature's expressed views on the prior meaning of its statute, although not binding, "are entitled to due consideration." *W. Sec. Bank*, 933 P.2d at 514; *see also Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1032-34 (9th Cir. 2003); *ABKCO Music, Inc. v. Lavere,* 217 F.3d 684, 689-90 (9th Cir. 2000). We give particular weight to the "legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute." *W. Sec. Bank*, 933 P.2d at 514 (internal quotation marks omitted); *see also Huson v. County of Ventura*, 96 Cal. Rptr. 2d 116, 120 (Cal. Ct. App. 2000). We also consider whether the legislature's expressed views have objective support in either the language or history of the legislation, and whether they are in accordance with the practice of the affected agency. *See W. Sec. Bank*, 933 P.2d at 516-520; *City of Redlands v. Sorenson*, 221 Cal. Rptr. 728, 732 (Cal. Ct. App. 1985).

**[6]** In this case, the California legislature made clear that in its view the amendment constituted a clarification and not a substantive change. Given that just two years had elapsed between the initial enactment of § 514 and the amendment, we give considerable weight to the legislature's interpretation.

Furthermore, the legislature's position — that the meal period provisions applied without interruption to workers covered by collective bargaining agreements — is in full accord with the longstanding regulations of the IWC, duly authorized by other provisions of the Labor Code,[9] as well as with consistent and historic agency practice. *See* Re: Impact Of SB 1208 On Existing CBA, 2002 Cal. DLSE Lexis 37, at *1-2 (Cal. Dep't Indus. Relations Dec. 9, 2002) ("IWC Order[ ] 1 . . . do[es] not provide and never [has] provided, a CBA opt-out for meal period requirements").[10] The legislature's position is bolstered by other provisions of the Act of which the original § 514 was a part that expressly authorized the IWC to maintain the existing wage orders in effect — orders that applied to signatories to collective bargaining agreements. *See* Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999, 1999 Cal. Stat., ch. 134 (A.B. 60), pmbl; §§ 10, 11 (codified at Cal. Lab. Code §§ 516, 517). Finally, the validity of the legislature's declaration is further confirmed by the subsequent promulgation of Wage Order 1-2001, which expressly applied to workers covered by collective bargaining agreements, as well as by the enactment of § 226.7, which mandated meal periods and penalties that could not be negotiated away through any form of private agreement. *See* Cal. Lab. Code §§ 219, 226.7. Accordingly, we accept the California legislature's determination that the amendment constituted a clarification and not a retroactive change, and that the right to meal periods and penalties does apply, and has consistently applied, to workers covered by collective bargaining agreements.

---

[9]The long-standing regulations that guaranteed meal periods were promulgated under the agency's authority under provisions of the Labor Code outside of the 500 chapter. *See* Cal. Lab. Code § 1173; *see also Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 561-62 (1996) (citing Cal. Lab. Code, §§ 1173, 1178.5, 1182).

[10]"[W]hile not controlling upon the courts by reason of their authority, [DLSE documents] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Bell v. Farmers Ins. Exch*. 87 Cal. App. 4th 805, 815 (2001).

### 2. *Meal periods and penalties are nonnegotiable.*

**[7]** Given that the right to meal periods applies to workers with collective bargaining agreements, we must next consider whether the right is nonnegotiable under California state law. As the Court wrote in *Livadas*, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." 512 U.S. at 123. Section 301 "does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights." *Balcorta*, 208 F.3d at 1111. "Were we to extend the § 301 complete preemption doctrine to allow for preemption by virtue of such a waiver, 'parties would be able to immunize themselves from suit under state-laws of general applicability by simply including their unlawful behavior in a labor contract.' " *Id.* (citing *Associated Builders & Contractors*, 109 F.3d at 1357).

**[8]** In this case, the Labor Code provisions at issue, as well as the wage order, are designed to protect individual employees. Indeed, meal period provisions address some of "the most basic demands of an employee's health and welfare." *Cal. Mfrs. Ass'n.*, 167 Cal. Rptr. at 215. Moreover, the text of the wage order and the statutory provisions, discussed at length above, make clear that the right to meal periods is a generally applicable labor standard that is not subject to waiver by agreement. As stated plainly in § 219, the right cannot "in any way be contravened or set aside by a private agreement, whether written, oral or implied." Cal. Lab. Code § 219.

Ivy Hill argues that "the fact that various employees and industries have been and continue to be exempted or partially exempted from meal period provisions . . . wholly undermines any claim that they are the kind of supposedly nonwaivable protections addressed by the Court in *Livadas*." Put differently, Ivy Hill contends that because under state law some workers are exempted from the meal period requirement, the right to meal periods is waivable by all workers.

This argument is meritless. Simply because a substantive guarantee is not extended to all workers, does not mean that right can be negotiated away by those for whose benefit it was enacted. For example, in *Balcorta*, we held that § 301 does not permit parties to a collective bargaining agreement to waive the specific statutory requirements regarding the timely payment of wages to certain employees in the motion picture industry. *See* Cal. Lab. Code § 201.5; *Balcorta*, 208 F.3d at 1111-12. Yet in that case, the statutory provision applied to one particular group of employees only. *See* Cal. Lab. Code § 201.5. Under Ivy Hill's argument, the mere fact that not all workers are covered by a statute would render the rights conferred by that statute negotiable and, thus, subject to preemption. Indeed, under Ivy Hill's logic, the fact that some workers, such as farm workers employed on small farms are exempted from the federal minimum wage, *see* 29 C.F.R. § 780.300 (2005), would render the minimum wage negotiable for all employees. *But cf. Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 745 (1981) (holding that because federal wage laws "devolve on petitioners as individual workers, not as members of a collective organization[,] [t]hey are not waivable."). Ivy Hill's theory not only conflicts directly with § 219 of the California Labor Code and with *Balcorta*, but finds no support in any case that Ivy Hill has called to our attention or that we have uncovered.[11]

Relatedly, Ivy Hill contends that we must construe the collective bargaining agreement in order to determine whether there has been a waiver, and that because it is necessary to construe the contract, preemption applies. It is correct that preemption applies when resolution of a state law claim is "substantially dependent" on analysis of a collective bargaining agreement, such as "when pertinent principles of state law require[ ] construing the relevant collective-bargaining agreement." *Lingle*, 486 U.S. at 407, n.7; *see also Allis-Chalmers*

---

[11]Ivy Hill asserts that *Balcorta* was wrongly decided, notwithstanding the fact that it is binding law that has been repeatedly cited in this circuit.

*Corp.*, 471 U.S. at 220. Thus, "[i]t is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be preempted by § 301." *Lingle*, 486 U.S. at 407, n.7.

The rule that a state claim is preempted if it is necessary to construe the collective bargaining agreement has no relevance to the present case. We need not, indeed may not, construe the Ivy Hill collective bargaining agreement in order to consider whether a waiver exists because any provision of the collective bargaining agreement purporting to waive the right to meal periods would be of no force or effect: The right in question is plainly nonnegotiable. Cal. Lab. Code § 219; *Balcorta*, 208 F.3d at 1111.[12] Aside from asserting generally that the state law right itself has been waived through the collective bargaining agreement, Ivy Hill points to no disputed contractual provisions that we need to interpret or construe in order to resolve the employees' claim.[13] Thus, the construction of the collective bargaining agreement is simply not involved.

---

[12]Even assuming *arguendo* that the right to meal periods could be bargained away by a union, we could not determine that the employees had waived their rights without " 'clear and unmistakable language' " so indicating in the collective bargaining agreement. *See Cramer*, 255 F.3d at 692 (quoting *Livadas*, 512 U.S. at 125); *see also Lingle*, 512 U.S. at 125. In this case, Ivy Hill cites no "clear and unmistakable language" waiving the right to non-working meal periods or penalties. Although past practice at the plant was to work meal breaks and although the contract states that employees shall be paid at one and one-half times their hourly rate for lunches worked, the contract also states that "[n]o employee shall be compelled to work more than five (5) hours without being permitted to have one-half (1/2) hour for lunch." In no way does the contract language clearly and unmistakably waive the right to meal periods and penalties.

[13]Indeed, Ivy Hill concedes that the mere need to examine and apply provisions in the collective bargaining agreement, in order to compute damages, for example, does not render the employees' claims preempted. *See Livadas*, 512 U.S. at 124-25 (citing *Lingle*, 486 U.S. at 413, n.12).

## III. CONCLUSION

**[9]** The right to meal periods applies to signatories of collective bargaining agreements and constitutes a nonnegotiable right under California state law. Because the employees have based their meal period claim "on the protections afforded them by California state law, without any reference to expectations or duties created by the[ir] [collective bargaining agreement]," *Cramer*, 255 F.3d at 693, the claim is not subject to preemption and we lack jurisdiction over it. Moreover, because Ivy Hill does not claim preemption with regard to rest periods, we lack jurisdiction over that claim as well. Any claim of supplemental jurisdiction must fail in light of our principal holding regarding preemption. We remand the case to the district court with instructions to remand it to the state court.

**REVERSED and REMANDED**.