Dissent by Judge CHRISTEN
OPINION
KLEINFELD, Senior Circuit Judge:
This is a Railway Labor Act preemption case. We decide, not the merits of the case, but which entity should decide upon the merits, the State of Washington, or the System Adjustment Board established *1083 pursuant to a collective bargaining agreement.
Facts.
Though this became a dispute between the airline and a state agency and union, it arises out of a dispute between a flight attendant and the airline about her sick leave. The flight attendant, Laura Masser-ant, called in sick in May, to care for her son who was ill. She proposed to take two days off as sick leave to care for him. But she had used up all her sick leave. She had vacation leave coming to her, but vacation leave is scheduled the October before the year in which it is to be used. Masserant had cashed out most of her vacation leave, and had scheduled all her remaining vacation leave for December, so she had none available to her in May. If Masserant had called in sick, despite having used up all her sick leave, she would have accumulated “points.” Under the collective bargaining agreement between her union and the airline, if a flight áttendant calls in sick too many times after using up all her sick leave, accumulating too many points, she is subject to graduated discipline—counseling, warning, and for enough points, termination.
Masserant claimed an entitlement to use her December vacation leave for her child’s illness without being charged points, under the Washington Family Care Act. That state statute does not entitle an employee to any leave. But if the employee is entitled to paid time off, the employee is entitled to use it for a sick child, not just for her own illness or vacation.[1]
Masserant and the airline disagreed on how to interpret her entitlement. They do not dispute that she was entitled to seven days of vacation leave. But she had scheduled it for December. The airline claimed that she could only use it in December, but Masserant claimed that under the Washington statute, she was entitled to use it in May for her child’s illness. Masserant would be entitled to more sick leave in June, and the airline retroactively liberalized its policy so that she could use it in May, but even with that, she still did not have enough sick leave to cover the time she off she needed in May. The state agency that administers the Washington statute agrees with Masserant’s interpretation of the Washington statute.
The Washington statute does not create an entitlement to paid time off, sick leave or otherwise. It limits an employee to whatever her entitlement may be “under the terms of a collective bargaining agreement or employer policy.” And it requires that “[t]he employee taking leave under the circumstances described in this section must comply with the terms of the collective bargaining agreement or employer policy applicable to the leave, except for any terms relating to the choice of leave.”
The Alaska Airlines-Associated Flight Attendants collective bargaining agree *1084 ment entitles employees to use available leave, however denoted, to take care of a sick child.[2] It expressly provides that “sick leave” is usable for illness of a family member, not just the employee, and that availability of leave to care for family members is as broad as “the most liberal of the States in which flight attendants are domiciled.”[3]
The dispute between the parties is not about whether Masserant could take her leave, but when. The collective bargaining agreement is stuffed full of limitations to assure that when a plane is being prepared for takeoff, the requisite number of flight attendants are on board. The important part, for Masserant’s purposes, are the provisions on scheduling use of vacation leave. Flight attendants get 14 days after their first year, 21 days after five years, 28 days after 10 years, and 35 days after 18 years. The airline has to post a list of available vacation times by October 1 of the preceding year. Flight attendants have 15 days to sign up, -and vacation periods are granted on a seniority basis. Flight attendants may trade vacation days, within stated limits.
What they cannot do is fail, without notice, to show up.[4] They have to call in sick a certain number of hours prior to departure of their scheduled flight,[5] and not do it too often or else suffer “points.”[6] There is graduated discipline if too many points accumulate. “Points” are deleted for subsequent periods of proper attendance,[7] and no action is taken for the first few points,[8] but Masserant’s available and unused sick leave would not have covered her for the two day absence she sought in May. Masserant could have called in sick despite lacking available sick leave, three hours before each flight for which she was scheduled, but apparently the airline would have assessed points against her for absence without available leave. She wanted to take two days from the seven days of vacation leave she had scheduled in December, to avoid points. But the airline would not permit her to take her December vacation time in May. Vacation leave is “banked,” that is, treated as an entitlement, on January 1, and can be exchanged *1085 for cash in advance of the scheduled vacation, but a flight attendant cannot take the time off in advance of the time slot he or she scheduled the previous autumn. Mas-serant had taken four days of vacation leave and cashed out 21 days when her child got sick, leaving her only the seven days she had scheduled the previous fall for vacation in December. She claimed entitlement to take it in May instead, under the Washington statute.
As a practical matter, Masserant may be entitled to take time off to care for her sick child without penalty even though she has no sick leave available, because for a flight attendant’s first 4 1/2 points, there is no penalty. If a flight attendant gets too many points, they can be reduced by good attendance the next year.
Masserant and her union, the Associated Flight Attendants, disagreed with the airline’s position. But instead of grieving it under the collective bargaining agreement grievance procedure, they filed an administrative complaint with the State of Washington Department of Labor and Industries. The Department determined that Masserant was entitled to use her December vacation leave to care for her child in May. The airline was fined $200 for violating the statute. The airline, Masserant, and the union have agreed to delay state appellate and other proceedings so that this Railway Labor Act preemption dispute may be adjudicated. The district court granted summary judgment against the airline’s preemption claim. We now review the district court decision de novo.[9]
Some of the relevant provisions in the collective bargaining agreement and employer customs are not entirely clear cut. A provision says that “no attendance points are assessed for an absence called in for a sick child,” but it is not obvious how far this reaches. Though sick leave can clearly be used to care for a sick child, no such explicit provision is made for vacation leave and the evidence suggests that vacation leave cannot be so mixed. A flight attendant can trade vacation days with another flight attendant, subject to a deadline and approval. And a flight attendant can accumulate up to 4 1/2 points for absenteeism with no disciplinary action, and subtraction of 2 points per quarter thereafter for quarters in which there are no chargeable occurrences, despite the absence of available leave.
Analysis.
The issue before us is not whether Mas-serant is entitled to use her vacation leave, scheduled for December, in May, to care for her sick child. Though that is what the case is all about, it is not the issue posed for us. The issue before us is limited to Railways Labor Act preemption, that is, whether the state administrative board or the collective bargaining agreement grievance procedure ought to decide whether Masserant is entitled so to use her December vacation leave in May. This is one of those cases to which the Thomas Reed Powell line applies, “If you think that you can think about a thing inextricably attached to something else without thinking of the thing which it is attached to, then you have a legal mind.”[10]
The most important fact about this case is the circularity between the Washington statute and the collective bargaining agreement. The statute makes the employee’s entitlement to leave (as opposed to what the leave may be used for) dependent *1086 on the collective bargaining agreement. And the collective bargaining agreement expands use of leave to whatever the state statute says.[11] The point of the statute appears to be that, if an employee is entitled to take paid leave, whether denominated sick leave or any other kind, then the leave may be used to care for a sick relative, not just the employee himself. But entitlement to leave, under the statute, is to be defined by the collective bargaining agreement or employer practice. This dependence of the Washington statute on the collective bargaining agreement is established by its command that leave “shall be governed” by the collective bargaining agreement or employer policy.
Masserant’s claim can be resolved as a grievance under the collective bargaining agreement. It provides that “any controversy ... as to the meaning of any of the terms of this agreement” shall be presented as a grievance to a designated individual, with that person’s decision appealable to the Flight Attendants’ Board of Adjustment (two members appointed by the union, two by the company) and to mediation or arbitration (National Mediation Board under the Railway Labor Act provides a list of seven names, and each party strikes three). The question is not whether Mas-serant and her union could proceed with the grievance procedure, but whether the state agency is an alternative procedure available to them despite Railway Labor Act preemption.
“The Railway Labor Act was enacted ... [t]o avoid any interruption to commerce or to the operation of any carrier engaged therein.”[12] The Act requires that carriers make agreements and settle disputes with their employees to avoid interruption to commerce.[13] It covers airlines as well as railways.[14] And it includes “a mandatory system of dispute resolution.”[15] “Congress’s intent in the RLA [was] ‘to keep [carriers’] labor disputes out of the courts.”[16] To facilitate this process, the RLA provides a “mandatory arbitral mechanism to handle disputes ‘growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.’ ”[17]
Disputes under this regime are generally characterized as either major or minor. “[M]ajor disputes seek to create contractual rights, minor disputes to enforce them,”[18] so disputes about defining the rights guaranteed by a collective bargaining agreement are minor disputes.[19] Minor *1087 disputes are preempted by the RLA and must be dealt with first through a carrier’s internal dispute resolution process, and then a System Adjustment Board comprised of workers and management.[20] The Act states that among its purposes are to provide for settlement of “all” disputes about “pay, rules or working conditions,” and “all” disputes growing out of interpretation or application of agreements about “pay, rules, or working conditions.” [21]
There is an exception to this broad preemption, though, for independent state rights. Some exceptions are obvious, such as when the state right does not concern “pay, rules or working conditions.” But there are plenty of possible claims that arguably overlap both collective bargaining agreement provisions and state law. The Supreme Court appears to have evolved from the broadest possible preemption rule toward a more qualified rule, at least with respect to independent state-created rights.
The seminal preemption case, establishing the breadth of Railway Labor Act preemption, is Teamsters v. Lucas Flour Co.[22] It holds that federal labor law must be paramount under the supremacy clause in areas covered by the federal statute, to avoid inconsistent state law interpretations under state contract law of collective bargaining agreements.[23]
Allis-Chalmers Corp. v. Lueck holds that an apparently independent state tort unrelated to working conditions, bad faith denial of insurance coverage, was nevertheless preempted, because the bad faith claim was “inextricably intertwined” with the group health policy established pursuant to the collective bargaining agreement.[24] Lueck holds that “when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract,” the claim is preempted by federal labor law, and a state law suit should be dismissed.[25] A dictum in Lueck speaks directly to the case before us. Lueck says that “[cjlaims involving vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court” were they not deemed preempted.[26] Such state court action would “eviscerate a central tenet of federal labor-contract law under § 301, that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.”[27] The question in this case is the one answered by this dictum, though it is merely dictum, because Masserant’s claim is precisely that her vacation leave ought to be deemed available in May rather than December, because of state law affecting use of leave.
Though it had been implied in Lucas Flour and Lueck, the independent state claim limitation on federal preemption was articulated explicitly in Lingle v. Norge Division,[28] An employee’s claim for wrongful discharge, under state law protecting *1088 employees from retaliatory discharge for filing workers compensation claims, was held not to be preempted.[29] The reason was that the state law claim was “independent” of the collective bargaining agreement.[30] All that mattered for the fired employee’s state law claim was whether she was discharged and whether the employer’s motive was to interfere with or deter filing of her workers’ compensation claim.[31] This retaliatory discharge claim would be resolved by a “purely factual inquiry” not requiring the court to construe the collective bargaining agreement.[32]
Livadas v. Bradshaw[33] and Hawaiian Airlines v. Norris,[34] from almost a quarter century ago, are our most recent guidance from the Court. They expand the independent state right exception to broad Railway Labor Act preemption.
In Livadas, a state law required an employer to pay a fired employee’s wages immediately, but company practice was to send a check from the central office, which would arrive a few days after termination.[35] The employee filed a claim against her employer in the appropriate state agency, but the state agency, citing its nonenforcement policy, refused to enforce her claim against her employer because it would have to look to the collective bargaining agreement to determine her wage rate.[36] The amount due was undisputed and had in fact already been paid, albeit not immediately.[37] She filed a 1983 action against the state agency seeking a declaration that the agency’s enforcement policy was preempted by the National Labor Relations Act.[38] We ruled that the policy was not preempted,[39] but were reversed.[40] The Court held that the state agency’s policy disadvantaged workers who had entered into collective bargaining agreements, since unrepresented workers could get agency enforcement,[41] so the National Labor Relations Act antidiscrimi-nation provision preempted the state agency from refusing to enforce a claim on account of preemption. The collective bargaining agreement said nothing about when the wages due to fired employees had to be paid. The Court held that a claim under state law was not preempted because the question whether wages really were due immediately was one of state law “entirely independent” of any understanding of the collective bargaining agreement, and the amount the employee was entitled to was undisputed.[42]
Because the collective bargaining agreement was silent, Livadas created no tension with most of the previously articulated standards: “inextricably intertwined”; requires “analysis” of the collective bargaining agreement’s terms; “independent” and “purely factual”; not requiring that anyone *1089 “construe” the agreement. Citing to Lueck[43] and Lingle,[44] Livadas holds that federal preemption cannot not be read so broadly as to “pre-empt nonnegotiable rights conferred on individual employees as a matter of state law,” regardless of whether the underlying facts could also have given rise to a grievance under the collective bargaining agreement.[45] In the context of a claim where the only reference to the collective bargaining agreement would have been determination of the undisputed fact of Livadas’s wage rate, the “bare fact that a collective bargaining agreement will be consulted” though its meaning was undisputed, would not require preemption.[46] The determination whether the employee was entitled to a penalty for not having been paid “immediately” depended only on a calendar, and was “entirely independent of any understanding embodied in the collective bargaining agreement.”[47] The agency would merely “look to” the collective bargaining agreement for the wage rates, which was undisputed.[48]
The other preemption case from the 1993 term, Hawaiian Airlines, Inc. v. Norris, involved an employee who claimed he was fired in violation of a state “Whis-tleblower Protection Act” because he refused to certify a plane he thought was unsafe.[49] As in Livadas, the Court held that even though the basis for an independent state law claim could give rise to a grievance pursuant to the collective bargaining agreement, that did not imply that only a grievance could be brought, to the exclusion of a claim in state court.[50] The “only source” of the right the fired employee sought to enforce, protection of whistle blowers, was state law.[51] “[W]here the resolution of a state-law claim depends on an interpretation of the CBA, the claim is preempted,”[52] but “as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is ‘independent’ of the agreement.”[53] State law claims “entirely independent” of the collective bargaining agreement are not preempted and subject to Railway Labor Act or LMRA arbitration.[54]
We have had quite a few opportunities in the decades since these decisions to try to apply them, and have articulated varying formulas for adjudication. In so doing, we have recognized that distinguishing preempted from non-preempted claims under state law “is not a task that always ‘lends itself to analytical precision.’ ”[55] The *1090 fundamental question is always whether the state right is sufficiently independent of the collective bargaining agreement to avoid the broad preemption of the National Labor Relations Act and Railway Labor Act. That is a question requiring judgment about the facts and agreement in the particular case, and cannot be resolved merely by relying on one or another of the varying words and phrases in the cases: “inextricably intertwined,” “analysis of the terms,” “entirely independent,” “interpretation,” and “look to.”
We have developed, as our tool for making that unavoidable judgment, a three-step decision tree. The background is the broad preemption of the Supreme Court decisions discussed above. Our three-step decision tree says when the exception to preemption for an independent state right can be made:
[The] court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is “yes,” and the answer to either the second or third is “no.”[56]
Since a “yes” answer to the first question, and a “no” to either of the other two, compels preemption, we often have not needed to address all three.
In the cases in which we identified an independent state claim that was not preempted, most frequently the dispute was the extent to which the collective bargaining agreement had to be considered to decide whether the state claim was so independent as not to be preempted. The California disability discrimination claims were not preempted in Jimeno and Espi-nal, because the collective bargaining agreement contained no general antidis-crimination clause, and the state discrimination claim could be evaluated without construing the collective bargaining agreement.[57] In Balcorta v. Twentieth Century-Fox Film Corp., we held that a California statute requiring motion picture employees to be paid within 24 hours of discharge was not preempted, because a cursory examination of the collective bargaining agreement showed that it did not say what “discharge” meant or when a discharged employee had to be paid.[58] The state law claim did not “require us even to refer to the collective bargaining agreement, let alone interpret it.”[59] In Cramer v. Consolidated Freightways, Inc., a California law prohibiting two-way mirrors that allowed observation of toilets was not preempted, because the employees’ privacy claims were “not even arguably covered by the collective bargaining agreement.”[60]
Burnside v. Kiewit Pacific Corp. perhaps goes the furthest of any of our cases in rejecting preemption, since the employees’ state law claim for additional compen *1091 sation for daily meetings and travel time was addressed to some extent in the collective bargaining agreement.[61] But state law provided that the state rule applied “unless the collective bargaining agreement expressly provides otherwise.”[62] The union and employer could opt out of the state law rule, but the collective bargaining agreement did not expressly so provide. Thus the state rule required only a look at the collective bargaining agreement to see whether there was an express “opt-out,” and no further analysis of it was needed to adjudicate the state claim. We limited our decision: “Our decision today reaches only opt-out, not opt-in statutes.”[63]
On the other hand, we held that the state claim was preempted in Firestone v. Southern California Gas Co.[64] The state law claim was for overtime at time and a half, but had an exemption for collective bargaining agreements that met certain terms.[65] Because the claim required “the collective bargaining agreement [to] be interpreted to determine ... whether California’s overtime exemption provision applies,” it was not sufficiently “independent” to avoid preemption.[66] We distinguished Livadas because there the collective bargaining agreement had no terms that needed to be “interpreted.”[67]
The words used to describe what distinguishes an independent state right are not talismanic, and are not consistent from case to case. The Supreme Court has used “analysis of the terms,” “construe,” requiring “interpretation,” and other phrases, and we have likewise used “consult,” “interpret,” “look at,” “analysis,” and others.[68] We have recognized the opacity of these attempts to draw a line between independent and intertwined state claims. In Bal-corta, we called the line “hazy.”[69] In Cramer and Burnside, we said it was not “a line that lends itself to analytical precision.” [70]
What we wind up with from all these cases is the need to exercise judgment, not a mechanical rule. Our three part test and words and phrases establish only a “hazy” and indeterminate line between independent state rights and state rights inextricably intertwined with the collective bargaining agreement. In this case, the sounder view is that the state law right and the collective bargaining agreement are indeed inextricably intertwined.
The Washington statute says that whatever right to leave to care for family members the employee has depends on her collective bargaining agreement. We held in Burnside that “if the right exists solely as a result of the CBA, then the claim is *1092 preempted, and our analysis ends there.”[71] In this case, the right established by state law is a right to use paid leave to take care of a sick child or other designated family members:
(1) If, under the terms of a collective bargaining agreement or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee’s choice of sick leave or other paid time off to care for:
(a) A child of the employee with a health condition that requires treatment or supervision; or
(b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition.
An employee may not take advance leave until it has been earned. The employee taking leave under the circumstances described in this section must comply with the terms of the collective bargaining agreement or employer policy applicable to the leave, except for any terms relating to the choice of leave.
(2) Use of leave other than sick leave or other paid time off to care for a child, spouse, parent, parent-in-law, or grandparent under the circumstances described in this section shall be governed by the terms of the appropriate collective bargaining agreement or employer policy, as applicable.[72]
The statute expressly limits the right it establishes to employees “entitled” to leave “under the terms of a collective bargaining agreement or employer policy.” The employee “must comply” with those terms “except for any terms relating to the choice of leave.” This dependence of the state claim on the terms of the collective bargaining agreement means that the collective bargaining agreement has to be analyzed to see whether the employee is entitled to paid leave as in Firestone. If the flight attendant is entitled to leave under the collective bargaining agreement, she can use it to care for her son when he is ill. If not, not. The statute directs us to the collective bargaining agreement to determine whether the employee is entitled to any leave.
Under the three part test, “if the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there.”[73] Since the statute creates no right to any kind of paid leave, and conditions its expansion of rights upon an employee entitlement under the collective bargaining agreement, “the analysis ends there.” The right to leave in this case is “substantially dependent on analysis of a collective-bargaining agreement.”[74] Therefore it is preempted.
The union and the state agency argue that no “analysis” of the collective bargaining agreement is needed because of “the undisputed restrictions” the collective bargaining agreement places on use of pre-scheduled vacation leave. Because they do not dispute that Masserant was not entitled to use her vacation leave scheduled for December to care for her sick child in May, they argue, no analysis is necessary. They argue that because a mere “look to” the collective bargaining agreement and employer practice establishes that she is *1093 not entitled to use her December leave in May, no “analysis” is needed, so they avoid preemption under the second prong of the three part test. Whatever right she .has, they argue, arises solely out of the Washington statute.
That argument would fit a statute saying “regardless of whether an employee is entitled to paid leave under a collective bargaining agreement or employer policy, the employee is nevertheless entitled to up to ten days of leave per year to care for sick family members,” because it would establish a right independent of the collective bargaining agreement. But the Washington statute says the opposite, that the employee entitlement is conditioned upon her entitlement to paid time off under the collective bargaining agreement. She has to show an entitlement to leave under the collective bargaining agreement to use her leave to care for her sick child, according to the statute. Thus whatever right Mas-serant has cannot, by the terms of the statute, arise “solely” out of the statute.
The argument for Masserant seems to be that no “analysis” of the collective bargaining agreement is needed because it is plain and undisputed that she is not entitled to paid leave under it. That argument is mistaken for two reasons. First, it ignores the purpose of the distinction between “analysis” and mere “looking at.” The purpose is to distinguish independent state rights from rights intertwined with the collective bargaining agreement. The purpose is not to distinguish hard from easy analysis. “Analysis,” in the context of determining whether the state right is independent of the collective bargaining agreement, refers to whether the state claim cannot logically be determined independently of the provisions of the collective bargaining agreement. If the right is not logically independent, it’s not “independent,” whether the analysis is intellectually challenging or not. Otherwise, the point of the distinction, preserving a uniform meaning to the collective bargaining agreement, would be defeated. Any analysis can be made to sound simple or complex.
Second, the argument overlooks the first part of the three part test, a barrier which, if not overcome, precludes any need to ask whether the collective bargaining agreement would be analyzed in the state proceeding. Preemption applies because the right to take paid leave arises solely from the collective bargaining agreement. This statute only applies if the employee has a right conferred by the collective bargaining agreement, so the state right is intertwined with, and not independent of the collective bargaining agreement.
Our dissenting colleague relies heavily on our recent decision in Kobold,[75] but, as Kobold says, that case was “similar to Livadas in all pertinent respects” because the outcome was controlled by the calendar, not the collective bargaining agreement.[76] Kobold did not expand Railway Labor Act preemption. The Oregon statute required the employer to pay the deducted amount within seven, days of when the wages were due.[77] “Seven days” could be counted out on a calendar and needed no analysis of the collective bargaining agreement. Likewise, Kobold held that the breach of fiduciary duty claim, relying on two Oregon statutes, was not preempted because “[t]he statutory provisions create and impose duties on an employer independent of a CBA.”[78] By contrast, the *1094 Washington statute at issue in this ease creates a duty conditioned and dependent on the collective bargaining agreement.
Preemption of course does not mean that Masserant was not entitled to use her December vacation time in May to care for her son. All it means is that the question whether she could use her vacation leave in advance of her scheduled time for this purpose is to be determined by the dispute resolution process in the collective bargaining agreement, not by the state claim resolution process. All we decide is which dispute resolution process must be used, not what result it must reach.
The district court erred by rejecting preemption. Accordingly, we reverse and remand for appropriate resolution so that the dispute can be resolved by the process established in the collective bargaining agreement.
REVERSED AND REMANDED.

. Wash. Rev. Code § 49.12.270(1):
If, under the terms of a collective bargaining agreement or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee’s choice of sick leave or other paid time off to care for: (a) A child of the employee with a health condition that requires treatment or supervision; or
(b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition.
An employee may not take advance leave until it has been earned. The employee taking leave under the circumstances described in this section must comply with the terms of the collective bargaining agreement or employer policy applicable to the leave, except for any terms relating to the choice of leave.

. "Sick leave may be used ... pursuant to applicable State law and/or Company policy- Pursuant to Company policy, no attendance points are assessed for an absence called in for a sick child (zero points per day),”

. "Whenever the new collective-bargaining refers to a sick child, it is understood that this is a placeholder for ‘family member.' With the Association’s agreement, the Company will apply the most liberal of the laws of the states in which Flight Attendants are domiciled in determining the appropriate definition of 'family member.' When this definition is determined, including any subsequent amendments pursuant to changes in law or in the interpretation of the law, the company will publish the definition and distribute it to the Flight Attendants.”

. “In all cases of absence, a Flight Attendant will be required to call the designated Company representative,”

. "Sick calls must be made to the designated Company representative at least two (2) hours prior to check-in (3 hours prior to scheduled departure)."

. For example, a "No Show” equals 2 1/2 points, a "Reported Illness Using Quarterly Point Reduction” equals 0 points, a "Reported illness after or without Using Quarterly Point Reduction” equals between 1/2 and 2 1/2 points, and an "Emergency Drop” equals 1/2 point.

. "For each calendar quarter during which a Flight Attendant is active for the entire quarter and has no chargeable occurrences during the entire quarter, two (2) points will be deleted from the Flight Attendant’s accumulated points until the total reaches zero (0). Time on leave of absence will not be counted toward record improvement.”

. "0-4 1/2 [points]: No action taken.”

. Espinal v. Nw. Airlines, 90 F.3d 1452, 1455 (9th Cir. 1996).

. Thurman W. Arnold, The Symbols of Government 101 (1935) (attributed to Thomas Reed Powell).

. "Sick leave may be used ... pursuant to applicable State law.”

. Aircraft Serv. Int’l, Inc. v. Int’l Bhd. of Teamsters, 779 F.3d 1069, 1073 (9th Cir. 2015) (en banc) (quoting 45 U.S.C. § 151a) (internal quotation marks omitted) (alternation in the original).

. 45 U.S.C. § 152, First.

. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 248, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

. Aircraft Serv., 779 F.3d at 1073 (citing Bhd. of R.R. Trainmen v. Chi. River & Ind. R.R., 353 U.S. 30, 40, 77, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957) (emphasis added)).

. Fennessy v. Southwest Airlines, 91 F.3d 1359, 1363 (9th Cir. 1996) (emphasis in original) (quoting Lewy v. Southern Pac. Transp. Co., 799 F.2d 1281, 1289 (9th Cir. 1986)).

. Norris, 512 U.S. at 248, 114 S.Ct. 2239 (quoting 45 U.S.C. § 153, First).

. See Consol. Rail Corp. v. Ry. Labor Execs. Ass’n., 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (quoting Elgin, Joliet & E. Ry. Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945)).

. Norris, 512 U.S. at 255, 114 S.Ct. 2239.

. 45 U.S.C. § 184.

. 45 U.S.C. § 151a(4)-(5).

. 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

. Id. at 103-04, 82 S.Ct. 571.

. 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

. Id. at 220, 105 S.Ct. 1904.

. Id. at 219-20, 105 S.Ct. 1904.

. Id. at 220, 105 S.Ct. 1904.

. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

. Id. at 401, 108 S.Ct. 1877.

. Id. at 407-10, 108 S.Ct. 1877.

. Id. at 407, 108 S.Ct. 1877.

. Id.

. 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

. 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

. Livadas, 512 U.S. at 111, 114 S.Ct, 2068.

. Id. at 112-13, 114 S.Ct. 2068.

. Id. at 113-14, 114 S.Ct. 2068.

. Id. at 111-12, 114 S.Ct. 2068.

. Livadas v. Aubry, 987 F.2d 552, 559-60 (9th Cir. 1991).

. Livadas, 512 U.S. at 110, 114 S.Ct. 2068.

. Id. at 128-30, 114 S.Ct. 2068.

. Id. at 124-25, 114 S.Ct. 2068.

. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

. Livadas, 512 U.S. at 123, 114 S.Ct. 2068.

. Id. at 124, 114 S.Ct. 2068.

. Id. at 125, 114 S.Ct. 2068.

. Id. (citing Lingle, 486 U.S. at 413 n.12, 108 S.Ct. 1877).

. 512 U.S. 246, 249-51, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

. Id. at 261, 114 S.Ct. 2239 C[T]he existence of a potential CBA-based remedy d[oes] not deprive an employee of independent remedies available under state law.”).

. Id. at 258, 114 S.Ct. 2239 (quoting Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 324, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972)).

. Id. at 261, 114 S.Ct. 2239.

. Id. at 262, 114 S.Ct. 2239 (quoting Lingle, 486 U.S. at 408-10, 108 S.Ct. 1877 (1988)).

. Id. at 259 & n.10, 114 S.Ct. 2239.

. Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 689 (9th Cir. 2001) (en banc)).

. Miller v. AT&T Network Sys., 850 F.2d 543, 548 (9th Cir. 1988) (footnote omitted); see also Espinal v. Nw. Airlines, 90 F.3d 1452, 1457 (9th Cir. 1996) (quoting the Miller standard); Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1523 (9th Cir. 1995) (same); Cook v. Lindsay Olive Growers, 911 F.2d 233, 240 (9th Cir. 1990) (same).

. Espinal v. Nw. Airlines, 90 F.3d 1452, 1457 (9th Cir. 1996); Jimeno, 66 F.3d at 1524.

. 208 F.3d 1102 (9th Cir. 2000).

. Id. at 1111.

. 255 F.3d 683, 688 (9th Cir. 2000) (en banc).

. 491 F.3d 1053 (9th Cir. 2007).

. Id. at 1062 (emphasis added).

. Id. at 1064 n.11.

. 219 F.3d 1063 (9th Cir. 2000).

. Id. at 1066.

. Id. at 1066-68.

. Id. at 1067.

. Many cases also tell us that we may not allow the scope of preemption to grow from an “acorn” into a “mighty oak.” See, e.g., Livadas v. Bradshaw, 512 U.S. 107, 122, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005).

. Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000) (quoting Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 749 (9th Cir. 1993)).

. Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001) (en banc); see Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting Cramer, 255 F.3d at 691).

. Burnside, 491 F.3d at 1059.

. Wash. Rev. Code § 49.12.270.

. Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007).

. Id. at 1059 (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)); see Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

. 832 F.3d 1024 (9th Cir. 2016).

. Id. at 1040.

. Id.

. Id. at 1041.